SOUTHWEST EXPLORATION CO., by Signal Oil & Gas Company, successor through liquidation, Appellant,

v.

Robert A. RIDDELL, District Director of Internal Revenue, Los Angeles, California, Appellee.

No. 19960.

United States Court of Appeals
Ninth Circuit.

June 22, 1966.

---

* William Harold Cox, United States District Judge for the Southern District of Mississippi, sitting by designation.

Dana Latham, John H. Hall, David H. Vena, Los Angeles, Cal., for appellant.

John B. Jones, Jr., Acting Asst. Atty. Gen., Meyer Rothwacks, Gilbert E. Andrews, Robert A. Bernstein, Attys., Dept. of Justice, Washington, D. C., Manuel L. Real, U. S. Atty., Loyal E. Keir, Asst. U. S. Atty., Chief, Tax Div., Los Angeles, Cal., for appellee.

Before KOELSCH and ELY, Circuit Judges, and BEEKS, District Judge.

KOELSCH, Circuit Judge:

■ This is an appeal from a judgment of the district court denying a taxpayer's claim for an income tax refund. The opinion appears in 232 F.Supp. 13 (1964).[1]

In 1938 Southwest Exploration Co. was granted leases of certain oil lands lying off the coast of the State of California. The then State law, enacted to protect beaches and fishing, permitted off-shore oil to be extracted only from wells located on filled land or slant drilled on upland sites. Owning no such property, Southwest entered into agreements with upland owners to use the latters' land in return for the payment of a portion of the net profits realized from the sale of oil.

■ Both Southwest and the upland owners claimed the percentage depletion deduction pertaining to the portion of the profits paid the owners.[2] Suits involving the tax years 1939 through 1945 were commenced; ultimately they reached the Supreme Court, which in February 1956 decided that the landowners were entitled to this deduction and that Southwest was not. Commissioner of Internal Revenue, v. Southwest Exploration Co., 350 U.S. 308, 76 S.Ct. 395, 100 L.Ed. 347 (1956). Final judgment, based on the Court's decision, was duly entered on August 7, 1956.

■ In its tax returns for 1950 through 1954, filed during the pendency of this litigation, Southwest, consistent with its practice in the earlier years, had claimed the entire depletion deduction. However, immediately after the Supreme Court's decision, Southwest deposited with the Commissioner against its liabil-

---

1. Taxpayer, Southwest Exploration Co., a California corporation, has been dissolved and liquidated, but nevertheless exists for the purpose of prosecuting this suit by virtue of Sec. 5400 of the California Corporations Code.

2. Pertinent sections of the Internal Revenue Code of 1939 provide:
"§ 23. DEDUCTIONS FROM GROSS INCOME.
In computing net income there shall be allowed as deductions:
*     *     *     *     *
(m) DEPLETION. In the case of mines, oil and gas wells, other natural deposits, and timber, a reasonable allowance for depletion and for depreciation of improvements, according to the peculiar conditions in each case; such reasonable allowance in all cases to be made under rules and regulations to be prescribed by the Commissioner, with the approval of the Secretary. * * * In the case of leases the deductions shall be equitably apportioned between the lessor and lessee. * * *
For percentage depletion allowable under this subsection, see section 114(b), (3) and (4)." 53 Stat. 12, 14, 26 U.S.C. § 23.

"§ 114. BASIS FOR DEPRECIATION AND DEPLETION.
*     *     *     *     *
(b) BASIS FOR DEPLETION.
*     *     *     *     *
"(3) PERCENTAGE DEPLETION FOR OIL AND GAS WELLS. In the case of oil and gas wells the allowance for depletion under section 23(m) shall be 27½ per centum of the gross income from the property during the taxable year, excluding from such gross income an amount equal to any rents or royalties paid or incurred by the taxpayer in respect of the property. Such allowance shall not exceed 50 per centum of the net income of the taxpayer (computed without allowance for depletion) from the property, except that in no case shall the depletion allowance under section 23(m) be less than it would be if computed without reference to this paragraph." 53 Stat. 45, 26 U.S.C. § 114.
The Internal Revenue Code of 1954 governed the depletion deduction to which Southwest was entitled in the last of the several tax years under consideration. The depletion provision contained in that Code (i. e., Sec. 613) differs slightly in verbiage from the one in the 1939 Code, set out above, but its effect is the same.

ity for principal and interest on the 1950–54 tax deficiency a substantial sum.[3] The next year (1957) Southwest executed a Waiver of Restriction on Assessment and Collection of Tax (Form 870) under which the Commissioner, at the conclusion of an administrative audit, made a formal assessment of the deficiency and interest.

In returning income for 1957 Southwest charged this interest as an expense. This treatment resulted in a net operating loss which it carried back and deducted from 1955 income to reduce the tax, previously paid, for the earlier year. The Commissioner rejected Southwest's refund claim. Pointing out that Southwest was an accrual basis taxpayer, he urged that the deficiencies in Southwest's income tax for 1950–54 and hence the interest on them did not accrue in 1957 but instead in 1956, a year in which its deduction would not benefit Southwest.

The parties mutually acknowledge that under the "all events" test, first declared by the Supreme Court in United States v. Anderson, 269 U.S. 422, 46 S.Ct. 131, 70 L.Ed. 347 (1926), an item of deduction for income tax purposes accrues in the tax year in which all events occur which fix the amount of the item and determine the liability of the taxpayer to pay it. They also recognize that there is no accrual "where the liability is contingent and is contested by the taxpayer." Dixie Pine Products Co. v. Commissioner of Internal Revenue, 320 U.S. 516, 519, 64 S.Ct. 364, 365, 88 L.Ed. 270 (1944). And they both agree that litigation is not required to initiate a contest but that one may arise if a taxpayer deliberately and in good faith claims as a deduction in his return an item which the Commissioner disputes. Gunderson Bros. Engineering Corp. v. Commissioner, 16 T.C. 118 (1951). In addition, the Commissioner candidly concedes that in this matter contests arose when South-

west filed its returns for each of the years 1950 through 1954. The issue, as indicated earlier in the opinion, is the tax year in which the contests were resolved. Southwest contends that its liability remained contingent and the amount of the deficiencies (and hence the interest thereon) was uncertain until the Commissioner in 1957 issued his formal notice of assessment based upon Southwest's "Waiver of Restrictions on Assessment and Collection of Tax" (Form 870), and the administrative determination of the tax liability. The Commissioner's position is that the Supreme Court's decision in 1956, with respect to the matter of depletion deduction, in effect settled adversely to Southwest the issue of its liability in the later years and that the amount of the liability was then susceptible of calculation.

The district court agreed with the Commissioner and entered judgment against Southwest. We are convinced that the district court was right.

■■■ The Supreme Court's decision, dealing as it did with tax years other than those presently under consideration, would not operate under the doctrine of *res judicata* to prevent the relitigating of the question of liability with respect to a deficiency for such other years. "Each year is the origin of a new liability and a separate cause of action." Commissioner of Internal Revenue v. Sunnen, 333 U.S. 591, 598, 68 S.Ct. 715, 719, 92 L.Ed. 898 (1948). Nor would it have absolutely precluded Southwest under principles of collateral estoppel from questioning the rule declared in *Sunnen* or in seeking to demonstrate its inapplicability due to a material change in the factual setting. Thus, to again quote from *Sunnen* (at p. 599, 68 S.Ct. at p. 720):

"[a] taxpayer may secure a judicial determination of a particular tax matter, a matter which may recur without substantial variation for some years

---

3. The purpose and effect of such a deposit is to stop the running of interest. It does not constitute a payment unless the taxpayer's liability is subsequently es-

tablished. Jacob J. Shubert v. Commissioner, 41 T.C. 243 (1963); 10 MERTENS, Law of Federal Income Taxation, § 58.27, at page 78 (1964).

thereafter. But a subsequent modification of the significant facts or a change or development in the controlling legal principles may make that determination obsolete or erroneous, at least for future purposes."

■ However, Southwest did not, either by appropriate action or otherwise, urge any such factual differences or legal obsolescence with respect to the tax years 1950–54. To the contrary, both by action and statement, Southwest in effect acknowledged its binding force. Thus shortly after the decision, Southwest filed its income tax return for 1955. In that return Southwest followed the decision in computing its depletion deduction. So far as the record shows, the legal relationship between Southwest and the upland owners had continued unchanged from that existing in 1939 through 1945. In addition, before the district court, Southwest frankly admitted that "the same depletion issue that was involved in the litigation concerning plaintiff's 1939–45 taxable years was also involved in the subsequent controversy concerning plaintiff's 1950–54 taxable years * * *." 4

■■ That the deficiency for one of the tax years comprised an item (i. e., Oklahoma intangible drilling expense) that concededly remained contingent until 1957 did not serve to postpone the accrual of the additional tax attributable to the overclaim of depletion. Such a consequence would effectively nullify the accrual method of accounting and run counter to the rule declared in *Anderson*. Paraphrasing the language of that decision, the Court of Claims in Seiberling Rubber Co. v. United States, 297 F.2d 842, 847, 156 Ct.Cl. 219 (1962) said (and we agree): "If liability is recognized, but the amount is not yet determined, an estimated reasonably accurate amount should be accrued." See Kershaw Mfg. Co. v. Commissioner, 313 F.2d 942 (5th Cir. 1963).

■ Neither was the amount of Southwest's liability uncertain under the "all events" test. Once liability is established, an accrual may be proper even though the amount is not definitely fixed, if reliable data is available by which to make a fairly accurate calculation. Continental Tie & Lumber Co. v. United States, 286 U.S. 290, 52 S.Ct. 529, 76 L.Ed. 1111 (1932). The sums paid the upland owners were not only beyond dispute but appeared in Southwest's tax returns. By adjusting the reported gross income to reflect the exclusion of these sums in conformity with the Supreme Court's decision and the depletion statute, the proper base for determining the depletion allowable to Southwest could be fixed. True, more was required to determine the precise sum than simply to multiply the adjusted amount by the de-

---

4. Southwest advances a number of interesting suppositions to support its argument, and urges a rule that would require formal termination of any contest. It sums up by saying " * * * the District Court in effect rules that the contest is 'constructively' over even before it is really over, if things just look bad enough. This 'keeps the word of promise to the ear but breaks it to the hope.' The essential error of the Court below is to treat a terminally ill patient as already dead. Subjective determinations and ambiguities can be readily avoided by awaiting the actual last breath." Perhaps the rule contended for would serve a worthwhile purpose but matters of that kind are for the legislative branch of the government. And unless we ignore completely the force of *stare decisis* the conclusion, under the facts of this case, is inescapable that the "patient" was "dead". Here, as we have sought to demonstrate the Supreme Court had already settled the issue of liability common to all tax years. The judgment was final. By contrast, in Commissioner of Internal Revenue v. Fifth Avenue Coach Lines, Inc., 281 F.2d 556 (2d Cir. 1960), a case heavily relied upon by Southwest, the issue of liability was the subject of a pending suit and time remained for the taxpayer to appeal from the adverse decision. And in Lehigh Valley R.R. Co. v. Commissioner, 12 T.C. 977 (1949), a case said by Southwest to be "on all fours" with this one, the taxpayer in good faith continued to dispute assessments in later years even after contests relating to assessments for earlier years had been judicially laid to rest.

pletion rate, for Sec. 114(b) (3)[2] imposed a ceiling of "50 per centum of the net income of the taxpayer (computed without allowance for depletion) from the property," on the amount a taxpayer may claim. But the returns also contained data from which could be determined (albeit not without some difficulty) the net income to be used for purposes of comparison.

The judgment is affirmed.