**MACKINAC ISLAND CARRIAGE TOURS, INC., a Michigan corporation, Petitioner,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

No. 71-1452.

United States Court of Appeals, Sixth Circuit.

Feb. 9, 1972.

Walter J. Murray, Detroit, Mich., for petitioner.

James H. Bozarth, Dept. of Justice, Tax Div., Washington, D. C., for respondent; Fred B. Ugast, Acting Asst. Atty. Gen., Meyer Rothwacks, Richard

W. Perkins, Attys., Tax Div., Dept. of Justice, Washington, D. C., on brief.

Before MILLER and KENT, Circuit Judges, and O'SULLIVAN, Senior Circuit Judge.

KENT, Circuit Judge.

This case has been previously before this Court. 419 F.2d 1103 (6th Cir., 1970). The facts are sufficiently stated in the previous opinion:

> The taxpayer is a Michigan corporation which operates horse drawn carriage tours on Mackinac Island. Such carriages, except for bicycles, constitute virtually the only means of transportation on the island. For many years the State of Michigan and the City of Mackinac granted yearly licenses to individuals to operate the carriage tours. In 1948, following complaints about bad service, the State required the individual operators to form a corporation with the hope that the State could more easily regulate the operation if it was conducted in corporate form. Thereupon all the individual operators formed a corporation, receiving one share of stock for each license owned upon payment of $20 per share. The former individual operators retained their individual licenses from the City, however, and each year the license holders rented their licenses to the corporation. Over the years it developed that a few non-stockholders acquired licenses from the City, and the corporation likewise rented these licenses each year.
>
> For the fiscal years 1961, 1962 and 1963 the corporation (hereinafter usually referred to as the "Taxpayer") paid its stockholder lessors $1,200, $1,550 and $1,500 respectively, and its non-stockholder lessors $1,600. These payments were reflected in Taxpayer's income tax returns for the years stated. The Commissioner disallowed all amounts claimed to have been paid as rentals in excess of $600 per lessor, and on the basis of such disallowance imposed deficiency assessments for the three years in the amounts of $18,876.58, $20,540.45 and $20,729.05. Taxpayer filed this action in the Tax Court and upon that court's determination that Taxpayer had failed to sustain its burden of showing its entitlement to a greater allowance Taxpayer perfected this appeal. (pages 1104, 1105).

Because of the inadequacy of the record this Court remanded the case to the Tax Court for further action. Additional witnesses were presented on behalf of the taxpayer. The Commissioner presented no further testimony.

From the record it appears that the petitioner, during the years involved, leased 55 touring licenses from its Class A stockholders; 3 livery licenses and 1 taxi license from its Class B stockholders, and 1 livery license and 2 taxi licenses from persons who were strangers to the corporation. It appears without any question that licenses are issued only to individuals. There is nothing in the record to indicate that the touring licenses leased from the Class A stockholders were of less value than the livery licenses and taxi licenses leased from Class B stockholders and strangers to the corporation. In fact the evidence forces the conclusion that the touring licenses should command at least as great a rental as the taxi and livery licenses[1].

1. The testimony of petitioner's witness, Arthur T. Chambers, was in part as follows: (Joint App. p. 152a)

Q. Why is the tour carriage license higher?
A. It is more profitable. It makes more money.

\*   \*   \*   \*   \*

Q. Now from those fifty-five years of experience, would you have an opinion as to the reasonable rental value of the City of Mackinac Island Carriage license in the years 1961, '62 and '63?
A. I have an opinion.
Q. What is that?
A. Starting with the taxi and the livery carriage, I'd say $1,500 approximately. And for the sight-seeing carriage, in the neighborhood of $2,000. (Joint App. p. 153a)

■ The Tax Court properly concluded that negotiations with nonstockholders for taxi and livery licenses were "arm's length" negotiations and that the amount paid was "required" to be paid and, therefore, properly deductible under Section 162(a) (3) of the Internal Revenue Code of 1954[2]. The Tax Court found what appears to us to be an illusory difference between Class A and Class B stock which difference we find to be unsupported by the evidence. The only real difference between the classes of stock referred to participation in assets on dissolution.

■■ The Tax Court properly stated the test to be applied in a quotation from Roland P. Place, 17 T.C. 199, at p. 203, aff'd. 199 F.2d 373 (6th Cir., 1952) cert. den. 344 U.S. 927, 73 S.Ct. 496, 97 L.Ed. 714:

The basic question is not whether these sums claimed as a rental deduction were reasonable in amount but rather whether they were in fact rent instead of something else paid under the guise of rent. The inquiry is whether the petitioner was in fact and at law "required" to pay these sums as rent. See section 23(a) (1) (A) of the Internal Revenue Code [of 1939]. When there is a close relationship between lessor and lessee and in addition there is no arm's length dealing between them, an inquiry into what constitutes reasonable rental is necessary to determine whether the sum paid is in excess of what the lessee would have been required to pay had he dealt at arm's length with a stranger. [Footnote omitted.]

The Tax Court then misapplied the test. Having found that the negotiations, with strangers to the corporation, for the taxi and livery licenses were conducted at arm's length and that the amounts paid were therefore properly deductible under Section 162(a) (3), the Tax Court ignored this finding in concluding that the amounts paid to the Class A stockholders were not properly deductible because negotiations were not at arm's length. However, the test is not whether the negotiations in question were at "arm's length" but rather "whether the sum paid is in excess of what the lessee would have been required to pay had he dealt at arm's length with a stranger."

The evidence in this case establishes that the different classifications of licenses were of equal or approximately equal value to a lessee and there is no evidence to the contrary. Having established such value in "arm's length" transactions with strangers to the corporation the petitioner established the reasonable rental "required" to be paid and was therefore justified in deducting that amount as being the reasonable rental which it would have been required to pay to a stranger.

The judgment of the Tax Court is reversed.

2. 26 U.S.C. § 162
SEC. 162 TRADE OR BUSINESS EXPENSES.
(a) *In General.*—There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including—

* * * * *

(3) rentals or other payments required to be made as a condition to the continued use or possession, for purposes of the trade or business, of property to which the taxpayer has not taken or is not taking title or in which he has no equity.