BERNARD P. McDONOUGH and ALMA G. McDONOUGH, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
McDonough v. Commissioner
Docket No. 16207-80.
United States Tax Court
T.C. Memo 1982-236; 1982 Tax Ct. Memo LEXIS 506; 43 T.C.M. (CCH) 1273; T.C.M. (RIA) 82236; May 3, 1982. Bernard P. McDonough and Alma G. McDonough, pro se. Mary Helen Weber, for the respondent. PARKER
MEMORANDUM FINDINGS OF FACT AND OPINION PARKER, Judge: Respondent determined deficiencies in petitioners' Federal income taxes in the amounts of $ 83,500.90, $ 56,386.40, and $ 43,761.91 for the taxable years 1974, 1975, and 1976, respectively. After concessions *507 by petitioners, the only issue for decision is whether petitioners "incurred or continued" indebtedness to "purchase or carry" tax-exempt securities within the meaning of section 265(2) of the Internal Revenue Code[1] so that the interest allocable thereto is not deductible. FINDINGS OF FACT The case was submitted to the Court fully stipulated. The stipulation of facts and the exhibits attached thereto are incorporated herein by this reference. Petitioners Bernard P. McDonough and Alma G. McDonough, husband and wife, resided in Parkersburg, West Virginia, at the time they filed their petition in this case. They filed joint Federal income tax returns for the taxable years 1974, 1975, and 1976, with the Internal Revenue Service Center, Memphis, Tennessee. Petitioners are the sole partners of the McDonough River Company, a general partnership. Each spouse is a general partner and owns a 50 percent interest in the partnership. The McDonough River Company partnership filed U.S. Partnership *508 Returns of Income (Forms 1065) for the taxable years 1974, 1975, and 1976 with the Internal Revenue Service Center, Memphis, Tennessee. For the taxable years 1974, 1975, and 1976, both petitioners and the McDonough River Company partnership reported their income on the cash basis method of accounting. During the years 1974, 1975, and 1976, the McDonough River Company partnership was in the business of leasing river barges. The partnership owned 13 river barges which it leased to third parties through an agent.All repairs and maintenance of the barges were handled by the agent, who was paid by the McDonough River Company for costs incurred. The barge rental activity was profitable during the taxable years 1974, 1975, and 1976, and all operating expenses were paid from barge rental income. In additioin to the barges, the McDonough River Company partnership also owned a portfolio of investment securities. These securities consisted of shares of corporate stock, corporate bonds, and debt instruments the income from which is exempt from Federal income taxation (the latter hereinafter referred to as tax-exempt securities). The partnership was not in the trade or business of dealing *509 in securities during the taxable years 1974, 1975, and 1976, and the portfolio of securities and the income therefrom were not utilized in the partnership's barge rental operation. The adjusted basis of all of the assets of the McDonough River Company partnership as of the dates indicated was as follows: Adjusted Basis
Date
of All Assets
December 31, 1973
$ 12,406,073.63
December 31, 1974
12,433,428.88
December 31, 1975
12,816,809.30
December 31, 1976
14,791,554.73
The adjusted basis of the portfolio of securities of the McDonough River Company partnership as of the dates indicated was as follows: Corporate
Tax-Exempt
Date
Stocks
Bonds
Securities [2]
Total [3]
12-31-73
$ 1,418,780.07
$ 1,091,200.32
$ 9,339,010.25
$ 11,848,990.64
12-31-74
1,655,995.39
1,183,561.19
9,505,987.70
12,345,544.28
12-31-75
1,913,438.61
675,212.11
9,633,656.90
12,222,307.07
12-31-76
3,131,206.54
270,315.11
10,737,869.10
14,139,390.75
*510 The adjusted basis of all of the assets owned by petitioner Bernard P. McDonough, including his interest in the assets of the McDonough River Company partnership, as of the dates indicated was as follows: Adjusted Basis
Date
of All Assets
December 31, 1973
$ 9,997,711.44
December 31, 1974
10,334,796.37
December 31, 1975
10,524,762.18
December 31, 1976
11,358,456.40
The assets of petitioner Bernard P. McDonough included a portfolio of securities owned individually. His individual portfolio consisted of corporate stocks, corporate bonds, and tax-exempt securities. The adjusted basis of his individual portfolio of securities as of the dates indicated was as follows: Corporate
Tax-Exempt
Date
Stocks
Bonds
Securities [4]
Total
12-31-73
$ 1,967,497.63
$ 542,465.06
$ 741,370.70
$ 3,251,333.39
12-31-74
999,097.06
535,249.78
2,018,886.70
3,553,233.54
12-31-75
841,497.09
587,010.71
1,743,715.10
3,172,222.90
12-31-76
1,359,770.08
267,644.17
1,719,639.60
3,347,053.85
*511 For just the tax-exempt securities owned by petitioner Bernard P. McDonough individually and his share of the tax-exempt securities of the McDonough River Company partnership, the adjusted basis as of the dates indicated was as follows: 12-31-73
12-31-74
12-31-75
12-31-76
Bernard P. McDonough,
individually
$ 741,370.70
$2,018,886.70
$1,743,715.10
$1,719,639.60
In partnership
4,669,505.13
4,752,993.95
4,816,828.45
5,368,934.55
Total
$5,410,875.83
$6,771,880.65
$6,560,543.55
$7,088,574.15
The adjusted basis of all of the assets owned by petitioner Alma G. McDonough, including her interest in the assets of the McDonough River Company partnership, as of the dates indicated was as follows: Adjusted Basis
Date
of All Assets
December 31, 1973
$ 7,469,961.70
December 31, 1974
7,352,527.45
December 31, 1975
7,656,005.40
December 31, 1976
8,622,478.90
The assets of petitioner Alma G. McDonough included a portfolio of securities owned individually. Her individual portfolio consisted of corporate stocks, corporate bonds, and tax-exempt securities. The adjusted basis of her individual portfolio of securities as of *512 the dates indicated was as follows: Corporate
Tax-Exempt
Date
Stocks
Bonds
Securities [5]
Total
12-31-73
$ 670,508.13
$ 24,118.12
$ 115,241.50
$ 809,867.75
12-31-74
599,091.18
37,580.62
115,241.50
751,913.30
12-31-75
581,572.83
91,256.87
160,204.00
833,033.70
12-31-76
574,919.83
24,118.12
160,204.00
759,241.95
For just the tax-exempt securities owned by petitioner Alma G. McDonough individually and her share of the tax-exempt securities of the McDonough River Company partnership, the adjusted basis as of the dates indicated was as follows: 12-31-73
12-31-74
12-31-75
12-31-76
Alma G. McDonough,
individually
$ 115,241.50
$ 115,241.50
$ 160,240.00
$ 160,204.00
In partnership
4,669,505.12
4,752,993.95
4,816,828.45
5,368,934.55
Total
$4,784,746.62
$4,868,235.45
$4,977,032.45
$5,529,138.55
The adjusted basis of the average amount of petitioners' tax-exempt securities (including their *513 respective shares of those of the McDonough River Company partnership) constituted the following percentages of the adjusted basis of the average amount of petitioners' total assets (including their respective interests in partnership assets), in the years shown: Bernard P. McDonough
Year
Percentage
1974
59.9176%
1975
63.9152%
1976
62.3725%
Alma G. McDonough
Year
Percentage
1974
65.1239%
1975
65.5978%
1976
64.5402%
Marmac Corporation was engaged in the trade or business of marine rentals and hotel rentals during the taxable years 1974 through 1976. Its voting stock was owned as follows: Owner
Percent of Voting Stock Owned
12/31/73
12/31/74
12/31/75
12/31/76
Bernard P. McDonough
31.5%
31.5%
31.5%
36.4%
Alma G. McDonough
31.4%
31.4%
31.4%
36.4%
Irrevocable Trusts for
Children and Grandchildren
of Bernard P. McDonough and
Alma G. McDonough
34.4%
34.4%
34.4%
26.7%
Others
2.7%
2.7%
2.7%
.5%
Total
100.0%
100.0%
100.0%
100.0%
The number of shares and the adjusted basis of the stock in Marmac Corporation owned by the petitioners on the dates shown were as follows: *514 Bernard P. McDonough
Date
No. of Shares Owned
Adjusted Basis of Shares Owned
12-31-73
590
$37,586.29
12-31-74
590
37,586.29
12-31-75
590
37,586.29
12-31-76
39,902
65,754.68
Alma G. McDonough
Date
No. of Shares Owned
Adjusted Basis of Shares Owned
12-31-73
588
$37,486.19
12-31-74
588
37,486.19
12-31-75
588
37,486.19
12-31-76
39,853
65,654,34
McDonough Corporation was engaged in diversified businesses, including dredging and equipment rental, during the taxable years 1974 through 1976. Its voting stock was owned as follows: Owner
Approximate Percent of Voting Stock Owned
12/31/73
12/31/74
12/31/75
12/31/76
Bernard P. McDonough
13%
12%
12%
12%
Alma G. McDonough
14%
14%
14%
14%
Marmac Corporation
16%
16%
16%
16%
Others
57%
58%
58%
58%
Total
100%
100%
100%
100%
The number of shares and the adjusted basis of the stock in McDonough Corporation owned by petitioners and Marmac Corporation at the dates shown were as follows: Bernard P. McDonough
Date
No. of Shares Owned
Adjusted Basis of Shares Owned
12-31-73
503,236
$496,298.80
12-31-74
488,170
484,871.03
12-31-75
469,045
471,695.05
12-31-76
462,754
466,855.35
*515 Alma G. McDonough
Date
No. of Shares Owned
Adjusted Basis of Shares Owned
12-31-73
576,982
$523,337.07
12-31-74
576,982
523,337.07
12-31-75
556,657
491,222.06
12-31-76
550,666
484,569.06
Marmac Corporation
Date
No. of Shares Owned
Adjusted Basis of Shares Owned
12-31-73
630,600
$1,151,511.00
12-31-74
630,600
1,151,511.00
12-31-75
630,600
1,151,511.00
12-31-76
630,600
1,151,511.00
Petitioners owned stock in many corporations in addition to Marmac Corporation and McDonough Corporation. Petitioners did not own a material amount of the voting stock of any of these other corporations. The McDonough River Company partnership did not own a material amount of the voting stock of any corporation. Neither petitioners nor the McDonough River Company partnership are dealers in securities within the meaning of Treasury Regulation § 1.471-5. The tax-exempt securities owned by petitioners and the McDonough River Company partnership during the taxable years 1974 through 1976 were marketable and capable of being sold. Sales of securities by the McDonough River Company partnership during *516 those years and the income or loss therefrom were as follows: Sales Price
Long-Term
Short-Term
Type of
or Redemption
Capital Gain
Capital Gain
Security
at Maturity
Cost
or Loss
or Loss
1974
Stocks
$ 769,909.00
$ 962,189.00
$ (188,308.00)
$ (3,972.00)
Corporate
Bonds
510,012.00
621,282.00
(111,270.00)
Tax-Exempt
Securities
947,793.00
1,134,805.00
(187,012.00)
1975
Stocks
$ 1,788,554.00
$ 1,487,755.00
$ 257,171.00 $ 43,628.00 Corporate
Bonds
468,326.00
497,997.00
(33,665.00)
5,994.00 Tax-Exempt
Securities
709,663.00
850,491.00
(140,828,00)
1976
Stocks
$ 315,864.00
$ 278,340.00
$ 36,603.00 $ 921.00 Corporate
Bonds
295,327.00
220,217.00
75,110.00 Tax-Exempt
Securities
1,516,317.00
1,603,385.00
(87,934.00)
866.00 Sales of securities by petitioners individually during the taxable years 1974 through 1976 and income or loss therefrom were as follows: Sales Price
Long-Term
Short-Term
Type of
or Redemption
Capital Gain
Capital Gain
Security
at Maturity
Cost
or Loss
or Loss
1974 - Bernard P. McDonough
Stocks
$ 1,457,650.00
$ 1,058,968.00
$ 405,850.00 $ (7,168.00)
Corporate
Bonds
41,625.00
58,590.00
(17,325.00)
Tax-Exempt
Securities
1,300,000.00
1,298,411.00
2,150.00 (561.00)
1975 - Bernard P. McDonough
Stocks
389,776.00
310,518.00
63,942.00 15,316.00 Corporate
Bonds
38,622.00
67,847.00
(29,225.00)
Tax-Exempt
Securities
2,229,904.00
2,255,724.00
(21,033.00)
(4,787.00)
1976 - Bernard P. McDonough
Stocks
173,792.00
156,801.00
12,183.00 4,808.00 Corporate
Bonds
99,915.00
62,912.00
37,003.00 Tax-Exempt
Securities
466,711.00
581,238.00
(114,452.00)
(75.00)
1976 - Alma G. McDonough
Corporate
Bonds
97,815.00
67,137.00
30,678.00 *517 For the taxable years 1974 through 1976, the McDonough River Company partnership had dividend and interest income from its portfolio of securities as follows: Type of
Income
1974
1975
1976
Dividend income from stocks
(taxable)
$ 63,539.00
$ 101,730.00
$ 141,004.00
Interest income from corporate
bonds (taxable)
121,247.00
122,333.00
41,505.00
Interest income from tax-exempt
securities (tax exempt)
605,110.00
661,247.00
704,473.00
For the taxable years 1974 through 1976, petitioner Bernard P. McDonough had dividend and interest income from his individual portfolio of securities, excluding his share of such income from the McDonough River Company partnership, as follows: Type of
Income
1974
1975
1976
Dividend income from stocks
(taxable)
$ 290,350.00
$ 379,157.00
$ 451,155.00
Interest income from corporate
bonds (taxable)
56,946.00
54,109.00
40,036.00
Interest income from tax-exempt
securities (tax exempt)
38,114.00
141,580.00
134,799.00
For the taxable years 1974 through 1976, petitioner Alma G. McDonough had dividend and interest income from her individual portfolio of securities, excluding her share *518 of such income from the McDonough River Company partnership, as follows: Type of
Income
1974
1975
1976
Dividend income from stocks
(taxable)
$ 320,425.00
$ 423,275.00
$ 489,889.00
Interest income from corporate
bonds (taxable)
4,208.00
7,506.00
4,906.00
Interest income from tax-exempt
securities (tax exempt)
8,122.00
9,012.00
11,608.00
The McDonough River Company partnership and petitioner Bernard P. McDonough each maintained brokerage margin accounts during the taxable years 1974 through 1976. Both had debit balances on those accounts and interest was charged on those debit balances. Tax-exempt securities were not held in those accounts during the taxable years 1974 through 1976, and tax-exempt securities were not acquired through the margin accounts during this period. The margin accounts of petitioner Bernard P. McDonough and the McDonough River Company partnership operated as follows. When a client purchases securities through a broker, he deposits only a portion of the purchase price with the broker. The remainder of the purchase price is supplied by the broker and is thus loaned to the client. The partial payment by the client *519 is known as the margin. The margin account, as recorded on the broker's books, reflects a debit balance, representing the amount loaned to the client. The securities purchased are held as collateral for the loan. The debit balance in the account is increased by the charging of interest and service charges by the broker, the additional purchase of securities by the client, and the withdrawal of cash by the customer. The debit balance in the account is decreased by the collection by the broker of dividends or interest for the account of the customer, the sale by the customer of securities held by the broker or to be received by him, and the deposit of cash by the customer either in answer to a call from the broker for additional margin or voluntarily by the customer. The McDonough River Company partnership had debit balances due to brokers on its margin accounts and paid interest to the brokers as follows: BALANCES DUE TO BROKERS
McDONOUGH RIVER COMPANY
Bacon,
Smith, Barney,
Barr.
Bache &
Whipple &
Harris, Upham,
Brothers
Company
Company
& Co.
Total
12/31/73
114,393.00 633,834.00
12,272.00 760,499.00
1/31/74
59,701.52 750,116.25
12,388.30 822,206.07
2/28/74
111,828.33 957,603.57
114.53 1,069,546.43
3/31/74
(35,811.73)
741,581.95
(64.77)
705,705.45
4/30/74
31,012.54 748,599.69
(64.77)
779,547.46
5/31/74
78,072.70 804,106.80
(64.77)
878,114.79
6/30/74
110,099.76 912,297.41
1,022,397.17
7/31/74
392,745.18 835,978.63
1,228,723.81
8/31/74
434,072.97 860,276.34
1,294,349.31
9/30/74
446,240.75 815,145.74
1,261,386.48
10/31/74
415,707.30 841,678.33
1,257,385.63
11/30/74
415,303.92 675,270.33
1,090,574.25
12/31/74
362,850.23 788,710.72
1,151,560.95
1/31/75
375,773.61 825,331.51
1,201,105.12
2/28/75
601,489.02 720,532.69
1,322,021.71
3/31/75
608,556.00 738,283.69
1,346,839.69
4/30/75
588,762.38 542,443.20
1,131,205.58
5/31/75
573,545.59 717,421.86
1,290,967.45
6/30/75
509,727.98 839,796.05
1,349,524.03
7/31/75
504,572.82 1,018,318.42
1,522,891.24
8/31/75
478,614.30 692,088.03
1,170,662.33
9/30/75
400,376.26 605,558.81
1,005,935.07
10/31/75
351,034.54 494,989.15
846,023.69
11/30/75
356,431.20 393,371.18
749,802.38
12/31/75
339,070.88 311,698.68
650,769.56
1/31/76
324,004.85 257,201.46
581,206.31
2/28/76
324,004.85 204,360.36
528,365.21
3/31/76
575,046.83 535,868.76
1,110,915.59
4/30/76
536,625.27 691,253.56
1,227,878.83
5/31/76
474,093.54 604,683.80
1,078,777.34
6/30/76
501,619.07 614,272.71
1,115,891.78
7/31/76
543,306.90 742,151.05
1,285,457.95
8/31/76
517,847.67 766,579.52
1,284,427.19
9/30/76
497,047.52 771,083.86
1,268,131.38
10/31/76
495,708.64 745,073.60
1,240,782.24
11/30/76
499,338.14 760,229.93
1,259,568.07
12/31/76
51,229.17
696,785.91 569,517.60
1,317,532.68
*520 INTEREST PAID TO BROKERS
McDONOUGH RIVER COMPANY
1/31/74
5,219.00
2/28/74
6,431.00
3/31/74
8,953.00
4/30/74
6,741.00
5/31/74
8,462.00
6/30/74
8,265.00
7/31/74
8,490.00
8/31/74
16,005.00
9/30/74
13,156.00
10/31/74
11,789.00
11/30/74
12,989.00
12/31/74
11,425.00
117,925.00
1/31/75
9,274.00
2/28/75
8,816.00
3/31/75
8,138.00
4/30/75
8,670.00
5/31/75
7,369.00
6/30/75
7,557.00
7/31/75
7,462.00
8/31/75
10,687.00
9/30/75
7,623.00
10/31/75
8,183.00
11/30/75
5,619.00
12/31/75
7,196.00
96,594.00
1/31/76
3,782.00
2/28/76
2,794.00
3/31/76
4,994.00
4/30/76
6,378.00
5/31/76
6,760.00
6/30/76
6,212.00
7/31/76
7,215.00
8/31/76
7,481.00
9/30/76
7,156.00
10/31/76
8,663.00
11/30/76
6,542.00
12/31/76
8,674.00
76,651.00
Throughout the years involved in this case, the partnership held tax-exempt securities having a total adjusted basis greater than the total of the debit balances of its margin accounts and also purchased tax-exempt securities exceeding those total debit balances as follows: Total Debit
Total Adjusted
Total Adjusted Basis
Balances as of
Basis of Tax-Exempt
Of Tax-Exempt Securities
Year
December 31
Securities Bought
Held at End of Year
1974
$ 1,151,560.95
$ 1,301,782.45
$ 9,505,987.70
1975
650,769.56
978,160.20
9,633,656.90
1976
1,317,532.68
2,707,597.20
10,737,869.10
*521 Petitioner Bernard P. McDonough individually had debit balances due to brokers on his margin accounts and paid interest to the brokers as follows: BALANCES DUE TO BROKERS
BERNARD P. McDONOUGH
Becon,
Smith, Barney,
Bache &
Whipple &
Harris,
Company
Co.
Upham & Co.
Total
12/31/73
496,418.00
247,904.00
116,707.00 861,029.00
1/31/74
491,493.52
238,495.00
115,621.02 845,609.54
2/28/74
495,341.12
236,871.05
114,610.41 846,822.58
3/31/74
229,377.84
174,689.26
35,044.09 439,111.19
4/30/74
229,520.15
178,425.42
35,416.01 443,361.58
5/31/74
231,651.71
177,274.64
35,076.84 444,003.19
6/30/74
232,482.28
243,402.17
35,036.77 510,921.22
7/31/74
234,048.30
195,704.43
41,547.46 471,300.19
8/31/74
236,230.23
196,978.83
53,398.34 486,607.40
9/30/74
212,555.51
189,376.96
52,688.97 454,621.44
10/31/74
189,697.48
159,398.16
62,365.73 411,461.37
11/30/74
184,905.20
121,089.33
64,162.13 370,156.66
12/31/74
175,736.18
108,459.04
63,998.28 348,193.50
1/31/75
167,789.71
108,987.69
64,290.33 371,067.73
2/28/75
219,625.37
108,774.14
62,816.62 391,216.13
3/31/75
210,012.23
104,345.05
61,823.55 376,180.83
4/30/75
238,726.08
92,441.48
60,789.39 391,956.95
5/31/75
227,734.69
88,416.44
60,458.55 376,609.68
6/30/75
228,798.12
75,310.76
60,787.18 364,896.06
7/31/75
228,255.07
75,561.75
60,855.98 364,672.80
8/31/75
214,914.67
63,916.85
45,625.61 324,457.13
9/30/75
191,586.36
59,416.19
42,390.01 293,392.56
10/31/75
190,462.41
134,445.62
17,019.10 341,927.13
11/30/75
191,485.03
159,903.44
16,490.90 367,879.37
12/31/75
76,243.73
65,004.27
(22,319.58)
118,928.42
1/31/76
83,524.26
46,337.19
16,722.79 146,584.24
2/28/76
83,524.26
46,125.17
15,833.22 145,482.65
3/31/76
289,018.77
220,135.60
15,028.00 524,182.37
4/30/76
287,144.71
218,031.86
15,125.05 520,301.62
5/31/76
177,865.31
169,263.71
14,558.09 361,687.11
6/30/76
154,805.36
170,065.36
14,690.14 339,560.86
7/31/76
149,816.55
167,506.04
14,690.14 332,012.73
8/31/76
150,837.17
226,195.33
13,854.57 390,887.07
9/30/76
193,671.31
228,625.81
14,038.13 436,335.25
10/31/76
189,002.35
223,531.31
15,044.84 427,578.50
11/30/76
189,002.35
229,680.48
14,470.74 433,153.57
12/31/76
190,479.83
230,754.48
15,247.79 436,482.10
*522 INTEREST PAID TO BROKERS
BERNARD P. McDONOUGH
1/31/74
7,062.00
2/28/74
7,135.00
3/31/74
6,423.00
4/30/74
4,291.00
5/31/74
4,421.00
6/30/74
4,519.00
7/31/74
5,094.00
8/31/74
5,623.00
9/30/74
4,938.00
10/31/74
3,802.00
11/30/74
4,217.00
12/31/74
4,006.00
61,531.00
1/31/75
2,925.00
2/28/75
2,760.00
3/31/75
2,662.00
4/30/75
2,465.00
5/31/75
2,515.00
6/30/75
2,361.00
7/31/75
2,164.00
8/31/75
2,066.00
9/30/75
2,570.00
10/31/75
2,021.00
11/31/75
2,244.00
12/31/75
1,699.00
28,452.00
1/31/76
968.00
2/28/76
457.00
3/31/76
1,241.00
4/30/76
3,204.00
5/31/76
2,735.00
6/30/76
1,973.00
7/31/76
1,768.00
8/31/76
1,907.00
9/30/76
2,229.00
10/31/76
2,654.00
11/30/76
1,525.00
12/31/76
3,694.00
24,355.00
Throughout the years involved in this case, petitioners individually held tax-exempt securities having a total adjusted basis greater than the total of the debit balances of their margin accounts and, also purchased tax-exempt securities exceeding those total debit balances as follows: Total Debit
Total Adjusted
Total Adjusted Basis
Balances as of
Basis of Tax-Exempt
Of Tax-Exempt Securities
Year
December 31
Securities Bought
Held at End of Year
1974
$ 348,193.50
$ 2,575,927.00
$ 2,134,128.20
1975
118,928.42
2,025,514.90
1,903,919.10
1976
436,482.10
557,162.50
1,879,843.60
*523 During the years before the Court, the partnership and petitioners individually purchased tax-exempt securities having a total adjusted basis as follows: Petitioners
Year
Partnership
Individually
Total
1974
$ 1,301,782.45
$ 2,575,927.00
$ 3,877,709.45
1975
978,160.20
2,025,514.90
$ 3,003,675.10
1976
2,707,597.20
557,162.50
$ 3,264,759.70
There is no evidence in the record tracing either the direct or indirect source of the funds with which these purchases of tax-exempt securities were made. [6]
Considering both purchases and sales of tax-exempt securities during each year, the total adjusted basis of tax-exempt securities owned by the partnership and by petitioners individually increased or decreased each year as follows: Petitioners
Year
Partnership
Individually
Total
1974
$ 166,977.45
$ 1,277,516.00 $ 1,444,493.45 1975
127,669.20
(230,209.10)
$ (102,539.90)
1976
1,104,212.20
(24,075.50)
$ 1,080,136.70 *524 The McDonough River Company partnership incurred interest expense during the taxable years 1974 through 1976 in the following general categories: Interest on
Interest on
Unpaid
Brokerage
Interest on
Year
Taxes
Margin Accounts
Bank Loans
Total
1974
$ 377.00
$ 117,925.00
$ 55.00
$ 118,357.00
1975
96,594.00
96,594.00
1976
296.00
76,651.00
76,947.00
Each of the petitioners claimed a 50 percent share of this interest expense as a deduction on their joint income tax return each year. In addition to his share of the partnership interest expense, petitioner Bernard P. McDonough individually incurred interest expense during the taxable years 1974 through 1976 in the following general categories and claimed a deduction for this interest on petitioners' joint income tax return. Interest on
Interest On
Unpaid
Brokerage
Interest on
Year
Taxes
Margin Accounts
Bank Loans
Total
1974
$ 61,531.00
$ 14,629.00
$ 76,160.00
1975
12,533.00
28,452.00
40,985.00
1976
24,355.00
24,355.00
The $ 14,629 of interest on bank loans related to the following loans: Amount
Date
Date
Amount of Interest
Lender
of Loan
Borrowed
Repaid
Paid on Loan
Charleston
National Bank
$ 200,000.00
Aug. 20, 1974
Sept. 19, 1974
$ 3,698.00
Charleston
National Bank
$ 300,000.00
Unknown
Dec. 16, 1974
5,276.00
Peoples Bank
of Marietta
$ 200,000.00
Mar. 21, 1974
Apr. 5, 1974
622.00
Peoples Bank
of Marietta
$ 200,000.00
Sept. 18, 1974
Sept. 28, 1974
500.00
Peoples Bank
of Marietta
Unknown
Unknown
Dec. 31, 1974
4,533.00
$ 14,629.00
*525 There was no collateral for these loans and no restrictions were placed on the use of the proceeds of these loans. The proceeds were not used directly to purchase tax-exempt securities. There is no evidence in the record as to the use of which these loan proceeds were put. Similarly, in addition to her share of the partnership interest expense each year, petitioner Alma G. McDonough individually incurred interest expense during the taxable year 1975 for interest on unpaid taxes in the amount of $ 12,533. She incurred no other individual interest expense during the years before the Court. On audit, respondent allowed the deduction by petitioners of the interest on unpaid taxes paid by the partnership and by the individual petitioners and the $ 55 of interest on bank loans paid by the partnership in 1974. Respondent, however, disallowed a portion of the brokerage margin account interest and the interest on bank loans each year. Respondent determined the disallowed portion of the interest deduction each year by applying the allocation formula prescribed in section 7.02 of Rev. Proc. 72-18, 1972-1 C.B. 740, using the percentage factors set forth above for each *526 individual taxpayer for each year. That percentage factor was the percentage of the adjusted basis of his or her average amount of tax-exempt securities (including share of partnership's tax-exempt securities) to the adjusted basis of the average amount of his or her total assets (including interest in partnership assets).These percentage figures have been stipulated by the parties and they range from a low of 59.9176 percent to a high of 65.5978 percent. OPINION Generally a taxpayer may deduct all interest paid or accrued within the taxable year on indebtedness. Sec. 163(a). However, section 265(2) creates an exception to the general rule and disallows any deduction for interest on indebtedness "incurred or continued to purchase or carry" tax-exempt securities. Respondent says the exception of section 265(2) applies here, and petitioners argue to the contrary. This case involves the years 1974 through 1976. For the earlier years 1972 and 1973, these same petitioners presented the identical issue to this Court on virtually identical facts. [7] We ruled against petitioners and were affirmed by the Fourth Circuit. McDonough v. Commissioner,T.C. Memo. 1977-50, *527 affd. 577 F. 2d 234 (4th Cir. 1978). The issues presented were largely factual and the circuit court ruled that we did not err in holding that the taxpayers had failed to prove that they did not incur or continue the indebtedness to purchase or carry their tax-exempt securities within the meaning of section 265(2). Because that case turned on a failure of proof, we do not decide the present case on the basis of collateral estoppel. Commissioner v. Sunnen,333 U.S. 591, 599-600 (1948). However, we reach the same result in this case. During each of the years 1974 through 1976, *528 petitioners and their partnership purchased and held large amounts of tax-exempt securities. Neither petitioners nor their partnership were in the trade or business of dealing in securities. The partnership was in the barge rental business, a profitable business that paid all of its expenses out of the rental operations. However, over 95 percent of the partnership's assets each year were investment securities, and over 75 percent of its investments each year were in tax-exempt securities. The tax-exempt securities and the income therefrom were not used in the partnership's barge rental operations. Petitioners individually owned assets mostly in the form of investment securities and most of their investments were tax-exempt securities. These tax-exempt securities constituted from 59.9176 percent to 65.5978 percent of petitioners' total assets each year. The partnership and petitioners individually borrowed money each year and paid interest in the form of interest on bank loans and interest on brokerage margin accounts. The brokerage margin accounts were used only for taxable securities, and the tax-exempt securities were not purchased or sold through those brokerage margin accounts. *529 During the years before the Court, the partnership and petitioners individually purchased tax-exempt securities having a total adjusted basis as follows: Petitioners
Year
Partnership
Individually
Total
1974
$ 1,301,782.45
$ 2,575,927.00
$ 3,877,709.45
1975
978,160.20
2,025,514.90
$ 3,003,675.10
1976
2,707,597.20
557,162.50
$ 3,264,759.70
The record does not establish either the direct or indirect source of the funds with which these purchases of tax-exempt securities were made. Petitioners of course have the burden to establish that they did not incur or continue their indebtedness to purchase or carry tax-exempt securities. In the prior case, we reviewed the applicable case law under section 265(2), discussed the taxpayer's burden to establish the absence of the prohibited purpose, and commented as follows: In view of this admitted rule of law we are perplexed by the failure of Bernard to testify. Conceivably his testimony could have altered our view of this case. However, petitioners were prepresented by competent counsel and in such circumstances it is not the province of the Court to second-guess. Nonetheless, we do note our *530 holding in Wichita Terminal Elevator Co.,6 T.C. 1158, 1165 (1946) to the effect "that the failure of a party to introduce evidence within his possession and which, if true, would be favorable to him, gives rise to the presumption that if produced it would be unfavorable." Despite that statement and our holding that petitioners had failed to sustain their burden of proof, here too petitioners failed to testify. [8] On this record, we conclude as we did in the earlier case that petitioners have failed to prove that they did not incur or continue indebtedness to purchase or carry their tax-exempt securities. *531 Petitioners make two arguments as to why we should reach a different result in this case: (1) that they should be permitted to deduct all of their interest just as banks are permitted to and (2) alternatively, that if an allocation is to be made, the method should be based on the fair market value of their assets and not on the adjusted basis of those assets.The short answers to those arguments are (1) that petitioners are not a bank and (2) that they failed to submit any evidence as to fair market value to support any alternative allocation. However, petitioners apparently are sincere in urging the Court to consider these two additional arguments, and we will therefore explain more fully reasons for rejecting them. After adverting to the "apparent discriminatory treatment" afforded to banks as opposed to individuals, petitioners' argument, in its entirety, is as follows: Furthermore, I understand that the Congress of the United States has granted banks this special treatment because if banks were treated the way the IRS is handling us there would be serious interference with the marketing of municipal government securities. Your Honor, I believe our holdings of municipal *532 securities exceed those of many banks in this state. Also, we have purchased the entire issue of Two Wood County, West Virginia bonds. Additionally, we have substantial holdings in other issues. If banks are permitted to deduct their interest expense then so should we. Petitioners are correct that banks generally are exempt from the application of section 265(2). This exemption prevails under a long-standing practice of the Internal Revenue Service sanctioned by the Congress. Rev. Rul. 61-222, 1961-2 C.B. 58; Rev. Proc. 70-20, 1970-2 C.B. 499; Rev. Proc. 81-16, 1981-1 C.B. 688; New Mexico Bancorporation v. Commissioner,74 T.C. 1342 (1980), Government's appeal to 10th Cir. dismissed. Indebtedness of a bank to its depositors is not treated as indebtedness incurred or continued to purchase or carry tax-exempt securities, largely because such treatment would seriously interfere with the marketing of Government securities that are mostly purchased by banks. S. Rept. No. 558, 73d Cong. 2d Sess. 24 (1934), 1939-1 C.B. (Part 2) 586, 604; H. Rept. No. 704, 73d Cong., 2d Sess. 21-22 (1934), 1939-1 C.B. (Part 2) 554, 570. *533 See Leslie v. Commissioner,413 F. 2d 636, 638 (2d Cir. 1969). While petitioners feel that they hold more tax-exempt securities than some banks in the State of West Virginia, and that may well be the fact, nevertheless, a distinction has been drawn between individuals such as petitioners and banking institutions. We are satisfied that there is a reasonable basis for such a classification or distinction, and there is no denial of due process, no denial of equal protection of the laws, and no unconstitutional discrimination in this case. United States v. Maryland Savings-Share Ins. Corp.,400 U.S. 4, 6 (1970); Nammack v. Commissioner,56 T.C. 1379, 1383-1384 (1971), affd. per curiam 459 F. 2d 1045 (2d Cir. 1972). Since petitioners are not a bank, they are not entitled to the treatment afforded to banks. Denman v. Slayton,282 U.S. 514 (1931); Bradford v. Commissioner,60 T.C. 253, 259 (1973). Alternatively, petitioiners say that if some allocable portion of their interest expense is to be disallowed, the "allocations should not be premised on the adjusted basis of the assets owned. *534 " Under section 7.02 of Rev. Proc. 72-18, 1972-1 C.B. 740, 743, the interest to be disallowed is determined by multiplying the total interest by a fraction, the numerator of which is the average amount of the taxpayer's tax-exempt securities (valued at their adjusted basis) and the denominator of which is the average amount of the taxpayer's total assets (valued at their adjusted basis). Petitioners' position is that "assets, except investments which constitute controlling interests in corporations, should be valued at market values and investments constituting controlling interests in corporations should be valued at the net asset values of the corporations controlled by the investments." Assuming that allocations should be made on the basis of market values, as petitioners contend, petitioners have failed to submit any evidence as to such market values. We do not understand petitioners to challenge the correctness of the mathematical computations that have been made by respondent under the allocation formula set out in Rev. Proc. 72-18, supra. And the use of that allocation formula has been approved by the courts. McDonough v. Commissioner,supra, 577 F. 2d at 236; *535 Bradford v. Commissioner,supra.
While petitioners challenge the use of that allocation formula in this case, they have not suggested any reasons why the formula is not proper, and the Court cannot think of any. Respondent argues, with considerable logic, that the use of adjusted basis is consistent with the purpose of section 265(2), since basis is implicit in the whole concept of purchasing and carrying tax-exempt securities. Respondent also advances other reasons, including administrative convenience, in support of the use of adjusted basis rather than fair market value. We find respondent's arguments cogent and persuasive, but we need not make any definitive ruling on the allocation formula in this case. On the record before us, we can find no reason to depart from the result reached in our earlier opinion. Decision will be entered for the respondent.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the taxable years involved in this case, unless otherwise stated.↩
2. The adjusted basis of the partnership's tax-exempt securities thus constituted the following percentage of the adjusted basis of the partnership's total investment portfolio for each respective year: 78.82, 76.99, 78.82, and 75.94. ↩
3. The adjusted basis of the partnership's total investments each year thus constituted the following percentage of the adjusted basis of the partnership's total assets for each respective year: 95.5, 99.29, 95.36, and 95.59.↩
4. The adjusted basis of his tax-exempt securities thus constituted the following percentage of the adjusted basis of his total investment portfolio for each respective year: 22.80, 56.82, 54.96, and 51.37.↩
5. The adjusted basis of her tax-exempt securities constituted the following percentage of the adjusted basis of her total investment portfolio for each respective year: 14.23, 15.32, 19.23, and 21.1.↩
6. In addition to their sales of tax-exempt securities, both the partnership and petitioners individually sold large amounts of taxable stocks and bonds during the years before the Court. There is also no evidence in the record as to the disposition of the proceeds of those sales.↩
7. The principal difference seems to be in the amounts involved. If anything, the record in this case is somewhat less fully developed than the record in the earlier case. We note that petitioners and the partnership were on the accrual basis of accounting in the earlier years, and were on the cash basis of accounting during the years before the Court. No issue has been raised about this change in accounting method, and the Court assumes all necessary adjustments have been made under section 481 to prevent amounts from being duplicated or omitted by reason of the change.↩
8. Petitioners are pro se in this case. Neither petitioner appeared at the trial of the case. An attorney, who had not entered an appearance in this case but who was specially recognized in open court, appeared to request that the case be submitted oin the parties' stipulation and to submit to the Court an unsigned two-page statement apparently prepared by Mr. McDonough.The Court received that statement as petitioners' brief, permitted the case to be submitted as fully stipulated, and scheduled simultaneous post-trial opening briefs and reply briefs. Petitioners did not file any post-trial briefs.↩