**Donald A. PECK; Judith W. Peck, Petitioners,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

No. 88–7484.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 14, 1989.

Decided June 5, 1990.

Harry J. Kaplan, San Jose, Cal., for petitioners.

James I.K. Knapp, Acting Asst. Atty. Gen., Gary R. Allen, David English Carmack, Kenneth W. Rosenberg, Tax Division, Dept. of Justice, Washington, D.C., for respondent.

Before WRIGHT, HUG, and LEAVY, Circuit Judges.

EUGENE A. WRIGHT, Circuit Judge:

This case requires us to apply collateral estoppel principles in the tax context. The taxpayers, Donald and Judith Peck, entered into a 30–year lease of real property in 1974 from their controlled corporation. The lease terms did not change for the first five years. In a prior action, the Tax Court found that the Pecks' rent deductions under the lease for 1974, 1975 and 1976 must be reduced by the full amount of gardening expenses and 25% of the property taxes and mortgage payments under 26 U.S.C. § 482.[1] This court affirmed that decision, with one judge dissenting in part. *Peck v. Commissioner*, 752 F.2d 469 (9th Cir.1985) (per curiam) (*Peck I*).

In this action, the IRS assessed deficiencies against the Pecks for 1977 and 1978 based on their rental deductions in connection with the same lease. The Tax Court applied collateral estoppel, and held that because the terms of the lease for these two years were the same as those for the first three years, the parties were bound by the courts' determination in *Peck I* in computing the amount of rent deductions. *Peck v. Commissioner*, 90 T.C. 162, 168 (1988).

---

1. Section 482 allows the IRS to apportion income and deductions between related taxpayers when necessary "in order to prevent evasion of taxes or clearly to reflect the[ir] income."

## ANALYSIS [2]

### I

■ The doctrine of collateral estoppel (issue preclusion) is intended to limit the number of times a defendant may be forced to litigate the same claim or issue, and to promote efficiency in the judicial system by putting an end to litigation. *Gilbert v. Ben–Asher*, 900 F.2d 1407, 1409–10 (9th Cir.1990). The doctrine provides that "once an issue is actually litigated and necessarily determined, that determination is conclusive in subsequent suits based on a different cause of action but involving a party or privy to the prior litigation." *United States v. ITT Rayonier, Inc.*, 627 F.2d 996, 1000 (9th Cir.1980).[3]

The Supreme Court explained the application of collateral estoppel in the tax context in *Commissioner v. Sunnen*, 333 U.S. 591, 68 S.Ct. 715, 92 L.Ed. 898 (1948). After articulating special concerns with respect to the doctrine's application in tax actions, *id.* at 598–99, 68 S.Ct. at 720, the Court adopted what has come to be known as the "separable facts" doctrine:

> Of course, where a question of fact essential to the judgment is actually litigated and determined in the first tax proceeding, the parties are bound by that determination in a subsequent proceeding even though the cause of action is different.... And if the very same facts and no others are involved in the second case, a case relating to a different tax year, the prior judgment will be conclusive as to the same legal issues which appear, assuming no intervening doctrinal change. *But if the relevant facts in the two cases are separable, even though they be similar or identical, collateral estoppel does not govern the legal issues which recur in the second case.*

*Id.* 333 U.S. at 601, 68 S.Ct. at 721 (emphasis added) (citations omitted). The Court concluded:

> Before a party can invoke the collateral estoppel doctrine ..., the legal matter raised in the second proceeding must involve the same set of events or documents and the same bundle of legal principles that contributed to the rendering of the first judgment.

*Id.* at 601–02, 68 S.Ct. at 721 (citing *Tait v. Western Md. Ry. Co.*, 289 U.S. 620, 53 S.Ct. 706, 77 L.Ed. 1405 (1933)).

The Court's decision in *Montana v. United States*, 440 U.S. 147, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979), calls *Sunnen's* separable facts doctrine into question. *Starker v. United States*, 602 F.2d 1341, 1346 (9th Cir.1979). The Court limited the application of *Sunnen* to cases where there has been a significant " 'change in the legal climate.' " *Montana*, 440 U.S. at 161, 99 S.Ct. at 977 (quoting *Sunnen*, 333 U.S. at 606, 68 S.Ct. at 723); *Starker*, 602 F.2d at 1347. Two circuits have concluded that the *Sunnen* separable facts doctrine is not good law after *Montana*. *American Medical Int'l, Inc. v. Secretary of Health, Education and Welfare*, 677 F.2d 118, 120 (D.C.Cir.1981) (per curiam); *Hicks v. Quaker Oats Co.*, 662 F.2d 1158, 1167 (5th Cir. 1981).

There is conflicting authority in this circuit as to whether *Sunnen's* separable facts doctrine is still alive.[4] The Supreme Court has rejected the separable facts doctrine in general terms, but has implied that it might have continuing validity in the tax context. *United States v. Stauffer Chemi-*

---

2. The underlying facts of this case are set out in detail in *Peck I.* 752 F.2d at 470–71.

3. Under res judicata, on the other hand, "a judgment on the merits in a prior suit bars a second suit involving the same parties or their privies based on the same cause of action." *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 326 n. 5, 99 S.Ct. 645, 649 n. 5, 58 L.Ed.2d 552 (1979). Because the Pecks' suit applies to tax years different from *Peck I,* this case presents a different cause of action, and res judicata does not apply.

4. In *Starker,* we stated that "we no longer follow [*Sunnen* ] on the question of similarity of facts." 602 F.2d at 1347 n. 4. However, we have also stated that the *Sunnen* principles "are especially important in the context of agency relitigation of legal issues with substantial public policy implications." *Western Oil & Gas Assoc. v. United States Envtl. Protection Agency*, 633 F.2d 803, 809 (9th Cir.1980).

*cal Co.,* 464 U.S. 165, 172 n. 5, 104 S.Ct. 575, 579 n. 5, 78 L.Ed.2d 388 (1984) ("Whatever applicability [the *Sunnen* separable facts doctrine] may have in the tax context, ... we reject its general applicability outside of that context."); *see also* 18 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 4425, at 255–57 (1981) (stating that tax litigation may present "the strongest case" for continued adherence to the *Sunnen* separable facts rule).

We need not decide whether the separable facts doctrine is still good law. Assuming, without deciding, that the more restrictive *Sunnen* test applies, we hold that the Tax Court properly used the collateral estoppel doctrine in this case.

## II

■ The issue litigated and decided in *Peck I* was the proper amount of rent deductions under the Pecks' 1974 lease with its controlled corporation. Applying the clearly erroneous standard, we upheld (1) the Tax Court's determination that it was " 'highly unlikely an unrelated lessee in petitioners' position would have paid $24,870 per year for the use of the land while also carrying responsibility for taxes, mortgage payments, and gardening expenses,' " and (2) the Tax Court's finding that the appropriate rent deductible under the lease for the three years at issue was the amount stated in the lease reduced by the gardening expenses and 25% of the property taxes and mortgage payments. *Peck I,* 752 F.2d at 472–73.

In deciding whether collateral estoppel applies under *Sunnen,* we must determine whether this proceeding involves "the same set of events or documents and the same bundle of legal principles that contributed to the rendering of the first judgment." 333 U.S. at 602, 68 S.Ct. at 721. We focus on whether the legal relationship changed

over the relevant time period. *See Southwest Exploration Co. v. Riddell,* 362 F.2d 833, 837 (9th Cir.1966) (applying collateral estoppel in the computation of depletion deductions when the legal relationship between the parties had not changed from the time period which was the subject of the prior action); *Jones v. United States,* 466 F.2d 131, 135–36 (10th Cir.1972) (applying collateral estoppel in determining the character of payments received under a contract which contained terms which did not change over the relevant time period), *cert. denied,* 409 U.S. 1125, 93 S.Ct. 938, 35 L.Ed.2d 257 (1973); *Sydnes v. Commissioner,* 647 F.2d 813, 815 (8th Cir.1981) (applying collateral estoppel in determining the character of payments under the same mortgage considered in a prior action).

■ The legal relationship in this case is a lease. The test for determining whether rent payments are reasonable is "whether the sum paid is in excess of what the lessee would have been required to pay had he dealt at arm's length with a stranger." *Mackinac Island Carriage Tours, Inc. v. Commissioner,* 455 F.2d 98, 100 (6th Cir. 1972) (applying 26 U.S.C. § 162, which allows deductions from gross income for ordinary and necessary business expenses).[5]

■ In the context of a long-term lease, the determination of what is a reasonable term is made as of the date of its inception. *See Brown Printing Co. v. Commissioner,* 255 F.2d 436, 440 (5th Cir.1958) (applying the predecessor to 26 U.S.C. § 162); *William E. Davis & Sons, Inc. v. Commissioner,* 41 T.C.M. (CCH) 1263 (1981) (in determining whether the terms of a lease are reasonable, the court examines its provisions in light of the facts and circumstances existing at the time it was executed).[6]

The *only* difference between this action and *Peck I* is the tax years involved. *Peck I* involved the first three years of the lease.

---

5. Although this test was adopted in the context of 26 U.S.C. § 162, it applies with equal force here. The purpose of 26 U.S.C. § 482 is to place controlled taxpayers in the same position as uncontrolled taxpayers in computing taxable income. Thus, our goal in *Peck I* was to determine the amount of rent the Pecks would have paid if they had dealt at arm's length with a stranger. *Peck I,* 752 F.2d at 472.

6. The Pecks argue that the cases cited in support of the proposition that the reasonableness of the rent term is determined at the inception of the lease all involved situations in which the rent term was found to be *reasonable* at inception. They argue that when a lease is determined to be *unreasonable* at inception, collateral estoppel cannot apply. We reject this argument. In a

This case involves the next two years of the same lease, the terms of which did not change over the entire five-year period. When this court affirmed the Tax Court's determination of the arm's length rent amount at the lease's inception in 1974, we effectively determined the proper rent deduction for the first five years of the lease.[7] As the Tax Court noted, "[h]ad the present case been consolidated for trial with the first case, one uniform result would necessarily have obtained." *Peck*, 90 T.C. at 168. We therefore reject the Pecks' argument that annual changes in fair market rent are relevant in applying § 482 to this lease.[8] This case does not involve separable facts.[9]

The Pecks argue that their complaint in this action raises a factual issue different from those raised in *Peck I*. Specifically, they alleged here that they did not transfer to their controlled corporation in 1974 any liabilities on the real property subject to the lease. They added this fact to their complaint based on the dissenting opinion in *Peck I*, which stated that the Tax Court erred in reducing the rent amount by 25% of the mortgage payments because the corporation did not assume or pay any portion of the mortgage. 752 F.2d at 473 (Beezer, J., dissenting).

■ This fact is neither new nor separable. It existed at the inception of the lease in 1974. Moreover, the dissenting opinion itself indicates that this issue was before the panel in *Peck I*. The majority apparently rejected it. In essence, what the Pecks are arguing is that the majority's decision was wrong. Even if we agreed that *Peck I* was decided incorrectly, this is an insufficient basis to defeat the application of collateral estoppel. *See Sydnes*, 647 F.2d at 815 (holding that a suit seeking a redetermination of the identical question of a tax statute's application based on the assertion that the court's opinion in the prior suit contains "untrue statements" is barred).

The Tax Court correctly determined that the controlling facts in this action are the same as those in *Peck I*.

### III

Finding that the facts are not separable does not end our inquiry. We next determine whether the legal principles have changed significantly since the first action. *Sunnen*, 333 U.S. at 600, 68 S.Ct. at 720; *Montana*, 440 U.S. at 155, 99 S.Ct. at 974. If so, collateral estoppel does not apply.

---

fixed rate lease, the arm's length rental payment is determined at inception. Consequently, collateral estoppel applies with equal force in the situation where the court in the first case finds that the lease rent term is unreasonable.

7. The Pecks argue that because the court in *Peck I* ignored the terms of the lease, it makes no sense to rely on that lease to determine the reasonableness of rent terms in future years. Their premise is incorrect. We did not ignore the terms of the lease in *Peck I*; rather, we found that the rent term under that lease was unreasonable. We then approved the Tax Court's determination of the proper rent deduction. The lease remained a valid legal document for all other purposes.

8. This conclusion is supported by our opinion in *Peck I*. Having found that the rent payment was unreasonable, the Tax Court applied its revised rent formula for all three years at issue in that case. We affirmed that decision. Neither we nor the Tax Court attempted to evaluate economic circumstances for each of the three years.

9. The Pecks rely on several cases to support their argument that this case presents facts sepa-

rable from *Peck I*. Two of these cases are clearly distinguishable because they do not involve the same document or legal relationship over the relevant time period. *Consolidated Edison Co. v. United States*, 279 F.2d 152, 154 (2d Cir.1960) (holding that under New York property tax law, the assessed valuation and tax imposed on a given parcel of land is separable from the valuation and tax imposed on that parcel for any other year), *aff'd*, 366 U.S. 380, 81 S.Ct. 1326, 6 L.Ed.2d 356 (1961); *Glenshaw Glass Co., Inc. v. Commissioner*, 13 T.C. 296, 306 (1949) (holding that payments made for successive years under an employee bonus plan are separable because separate action is required each year by the board of directors and the reasonableness of salaries for each year is "necessarily based upon different factors"). A third case is distinguishable because, although it involved the same long-term lease, it dealt with the tax characterization of different asset purchases in different years for different amounts. *Journal–Tribune Publishing Co. v. Commissioner*, 348 F.2d 266, 270–71 (8th Cir.1965) (en banc). This action, on the other hand, involves the same rent term in the same lease.

The Pecks rely on the Seventh Circuit opinion in *Eli Lilly & Co. v. Commissioner*, 856 F.2d 855 (7th Cir.1988), for the proposition that there has been a change in the law in the area of 26 U.S.C. § 482 reallocation determinations. Assuming, without deciding, that *Eli Lilly* is relevant to the issues presented here, it does not constitute a change in this court's law. *Cf. Montana v. Johnson*, 738 F.2d 1074, 1077 (9th Cir.1984) (indicating that only en banc decisions, Supreme Court decisions or Congressional legislation may overrule circuit precedent). We hold that there has been no significant change in the law since our decision in *Peck I*.

## IV

Finally, the Pecks argue that the Tax Court's opinion in *McDonough v. Commissioner*, 43 T.C.M. (CCH) 1273 (1982), controls the outcome of this case. The Tax Court held in that case that because the first action turned on a failure of proof, it could not decide the subsequent case on the basis of collateral estoppel. *Id.* at 1282. The Pecks rely on the language in *Peck I* which indicated that they had failed to meet their burden of persuasion in the Tax Court, 752 F.2d at 473, and argue that *McDonough* operates to prevent the application of collateral estoppel.

The decision in *Sunnen* and the purposes of the collateral estoppel doctrine do not support the rule stated in *McDonough*, and we reject it. As the Tenth Circuit has noted:

> If the taxpayers' case was not effectively presented at the first trial it was their fault; affording them a second opportunity in which to litigate the matter, with the benefit of hindsight, would contravene the very principles upon which collateral estoppel is based and should not be allowed.

*Jones*, 466 F.2d at 136.

## CONCLUSION

The gist of the Pecks' argument is that the Tax Court and this court were wrong in *Peck I*. In this action, they would like to introduce evidence to show that the dissenting judge was correct.

They will not get the opportunity. The issues presented here were necessarily decided in *Peck I*. There has been no change in the controlling facts or legal principles. Collateral estoppel applies.

AFFIRMED.

LEAVY, Circuit Judge, dissenting:

In *Peck I*, the tax court held that the transfer served a legitimate business purpose, and it concluded that the Commissioner could not "disallow" the deduction because section 482 authorized him only to "distribute, apportion, or allocate" certain items. *Peck v. Commissioner*, 43 T.C.M. (CCH) 291, 295 (1982).

The court went on to hold in favor of the Commissioner on the contention that the rent deduction should be reduced by the amount of those additional payments for expenses directly attributable to the land transferred to the corporation (as distinguished from payments attributable to the improvements retained by the taxpayers). *Id.* The holding in footnote 8 of *Peck I* is as follows:

> Petitioners' payment of property taxes and mortgage payments related to both land and improvements on the real estate. Only those payments attributable to the land and allocable to the lease period constitute "excessive" rent. The exact amounts are a proper subject for the parties under Rule 155, Tax Court Rules of Practice and Procedure. Respondent suggests the tax assessor's ratio for allocating value between land and improvements should be adopted to allocate the portion of taxes and mortgage payments attributable to the land. Petitioners did not offer another method of allocation and did not object to respondent's suggestion. Accordingly, for purposes of computing the portion of taxes and mortgage payments attributable to the land, the parties are directed to use the tax assessor's ratio of allocating 25 percent of the total property market value to the land. Of course, all gardening expenses are attributable to the land.

*Id.* at 296.

I dissent from the majority holding that the formula in footnote 8 binds the taxpay-

ers for the years 1977 and 1978. I agree with the majority's holding that the taxpayers are barred by collateral estoppel from the contention that the lease as written is reasonable. However, once that is decided, the Commissioner is required to exercise his discretion under section 482. The taxpayers should be allowed to contest the exercise of that discretion rather than be bound by a formula announced in *Peck I* which is now being applied prospectively.

The lease calls for an adjustment of the rent after five years based upon the Consumer Price Index. The lease as written is, as far as we know, enforceable under local law. If the taxpayers are bound for the years 1977 and 1978 by a formula allocation, then I fear they will be bound by the same formula for the entire remaining life of the lease. By applying collateral estoppel to the narrow question of the Commissioner's power under section 482, the majority may have rewritten the terms of the lease. If the deduction claimed by the taxpayers needs to be reallocated to avoid the ills that section 482 was designed to prevent, it should be done only on a year by year basis.