T.C. Memo. 2004-41

UNITED STATES TAX COURT

ALEC JEFFREY MEGIBOW, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 8369-02.              Filed February 19, 2004.

        Respondent determined deficiencies for
petitioner's 1997, 1998, and 1999 taxable years based
primarily on the disallowance of amounts claimed as
business expense deductions.

        Held:  Because petitioner failed to substantiate
claimed deductions, he is liable for income tax
deficiencies for 1997, 1998, and 1999.

        Held, further, petitioner is liable for sec.
6662(a), I.R.C., accuracy-related penalties with
respect to the years in issue.


Anthony M. Bentley, for petitioner.

D. Sean McMahon, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

WHERRY, Judge:  Respondent determined the following deficiencies and penalties with respect to petitioner's Federal income taxes:

|  | | Penalty |
| Year | Deficiency | Sec. 6662, I.R.C. |
| 1997 | $28,565 | $5,713.00 |
| 1998 | 43,789 | 8,757.80 |
| 1999 | 15,216 | 3,043.20 |

The principal issues for decision are:

(1) Whether petitioner is entitled to business expense deductions claimed on Schedules C, Profit or Loss From Business, for the taxable years 1997, 1998, and 1999; and

(2) whether petitioner is liable for the section 6662 accuracy-related penalty for the subject years.[1]

In the notice of deficiency, respondent also disallowed in full unreimbursed employee business expenses claimed by petitioner on Schedule A, Itemized Deductions, for 1999.  Neither party specifically addressed this matter at trial or on brief.  Such items are typically deemed conceded.  See Rules 149(b), 151(e)(4) and (5); Levin v. Commissioner, 87 T.C. 698, 722-723 (1986), affd. 832 F.2d 403 (7th Cir. 1987).  To the extent that anything in petitioner's brief could be interpreted to pertain to

---

[1] Unless otherwise indicated, section references are to the Internal Revenue Code in effect for the years in issue, and Rule references are to the Tax Court Rules of Practice and Procedure.

this adjustment, suffice it to say that our holding infra with respect to the Schedule C expenses, and the rationale therefor, apply equally to these Schedule A expenses. Certain additional adjustments made by respondent to petitioner's itemized deductions, exemptions, and self-employment tax are correlative in nature and will be resolved by our holdings on the foregoing issues.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulations of the parties, with accompanying exhibits, are incorporated herein by this reference. At the time the petition was filed in this case, petitioner resided in New York, New York.

Petitioner, a physician, timely filed Forms 1040, U.S. Individual Income Tax Return, for 1997, 1998, and 1999. On each of these returns, petitioner reported wage income from New York University (NYU) Medical Center and attached corresponding Forms W-2, Wage and Tax Statement. The amounts so reflected totaled $231,959.95, $248,625.68, and $305,592.93, for 1997, 1998, and 1999, respectively. Petitioner also included with each return a Schedule C for a "MEDICAL PRACTICE" with the stated name of "ALEC MEGIBOW". The Schedules C reported the income, expense deductions, and net losses set forth below:

|  | 1997 | 1998 | 1999 |
|---|---|---|---|
| Gross Income | $506,503 | $43,598 | $18,150 |
| Expenses: | | | |
| Car and truck | 6,838 | 7,228 | 1,041 |
| Depreciation | 12,523 | 10,392 | 8,387 |
| Travel | 15,562 | 9,728 | 1,357 |
| Meals and entertainment | 2,298 | 2,319 | -- |
| Other | 545,288 | 133,105 | 35,807 |
| Loss | (76,006) | (119,174) | (28,442) |

For each year, the "Other expenses" shown on the Schedule C incorporated an item labeled "FEES REMITTED TO NYU MEDICAL CENTER PER LETTER" in an amount equal to most or all of the Schedule C gross income reported for that year. The remaining "Other expenses" included figures for expenditures such as accounting, professional dues, telephone and communications, legal, postage, garage and parking, gifts, Amex dues, publications, computer and office, music, internet, local travel, CPE, and research.

By a letter dated March 24, 1999, Revenue Agent Melinda O'Connell (Ms. O'Connell) of the Internal Revenue Service informed petitioner that his 1997 tax return had been selected for examination. A similar letter dated February 23, 2001, under the signature of Area 2 Manager Michael Donovan, was subsequently issued informing petitioner that his 1998 and 1999 income tax returns had been selected for examination. Although a detailed chronology of these examinations is unnecessary for resolving the issues in dispute, some general observations are warranted. The

record contains evidence of repeated instances where petitioner or his representatives delayed or postponed appointments, failed to provide timely substantive responses to requests for information, or otherwise declined to act with any alacrity upon attempted communications from respondent.

Additionally, the processing of petitioner's 1997 through 1999 tax years was likely impacted by certain other administrative and judicial actions instituted by petitioner. Petitioner is no stranger to the Federal forum when it comes to his tax matters. Documents submitted in this case and public records reflect that petitioner has apparently been involved in at least three actions against the Internal Revenue Service based on the Freedom of Information Act (FOIA), 5 U.S.C. sec. 552 (2000). Megibow v. Commissioner, No. 03 CV 6020 (S.D.N.Y. Dec. 22, 2003); Megibow v. Commissioner, No. 01 CV 2979 (S.D.N.Y. Jan. 14, 2002); Megibow v. Commissioner, No. 97 CV 9500 (S.D.N.Y. Nov. 30, 1998). At least two FOIA requests, one of which seems to have precipitated the second of the just-listed suits, were made during the examinations of petitioner's 1997 through 1999 returns and pertained to those audits. A third FOIA request related to matters is this case was submitted after the issuance of the notice of deficiency and appears to have led to the most recent of the FOIA suits enumerated above.

Petitioner has also litigated a previous tax year, 1993, before this Court, with respect to which a ruling in favor of respondent was issued in Megibow v. Commissioner, T.C. Memo. 1998-455. That decision was appealed to the Court of Appeals for the Second Circuit, and the appeal was ultimately dismissed on May 25, 2000. Megibow v. Commissioner, No. 99-4099 (2d Cir. May 25, 2000).

Consistent with the foregoing general observations about petitioner's administrative and judicial history, the discussion below highlights aspects of the 1997 through 1999 examinations concerning substantiation of the Schedule C expenses at issue here. At an initial appointment on October 5, 1999, with Joel Gendler (Mr. Gendler), petitioner's certified public accountant, Ms. O'Connell reviewed certain of petitioner's bank statements for 1997 and prepared a Form 4564, Information Document Request, for 1997 asking that specified records be provided. Among other things, the Form 4564 requested a "letter from NYU showing income agreement and employee status (any reimbursement of expenses)" and "details of trips" in 1997 to the United Kingdom, Brazil, Amsterdam, and Argentina.

On or about October 28, 1999, Ms. O'Connell received from Mr. Gendler copies of brochures from medical conferences in which petitioner participated at the above-listed foreign locations. Additionally, at a time not clear from the record, petitioner

submitted to respondent a letter from the vice president for finance at NYU Medical Center dated March 9, 1998, and reading as follows:

> To:  Internal Revenue Service
>
> Alec Megibow, MD, Social Security No. * * * , is a full time faculty member and employee of the New York University School of Medicine.  Dr. Megibow serves as a participating physician in a unit of physicians which provides professional radiologic services for patients.
>
> Billings to patients for services rendered by Dr. Megibow are made to his name.  Under the terms of an agreement entered into between this institution and the participating physicians in the unit, all income derived from these professional services is remitted to New York University Medical Center and is credited to a special fund.
>
> Funds disbursed to the participating physician are reflected in their respective W-2 forms issued by New York University Medical Center.
>
> During the calendar year 1997, $506,503.15 was collected for billings rendered in Dr. Megibow's name.  Such amount was duly remitted to the Medical Center and credited to the aforementioned special fund.  No part of such receipts was retained by Dr. Megibow.

On March 17, 2000, Ms. O'Connell mailed to Mr. Gendler a second Form 4564 with respect to 1997.  This Form 4564 asked for certain items outstanding from the October 5, 1999 request,[2] for example:  "Another letter from NYU is needed outlining the reimbursment [sic] policy of expenses incurred by the doctor and

_____

[2] This Form 4564, Information Document Request, identified in the top right-hand corner as "Request Number 2", by apparent typographical error referred to the earlier Form 4564 as "IDR #2 issued on 10/05/99".  The Form 4564 issued on Oct. 5, 1999, is in fact designated on its face as "Request Number 1" for 1997.

and [sic] any included on the W-2."  Additional information was also requested as set forth below:

> Please provide documentation to support the following Schedule C expenses:
>
> - Depreciation- Verification of purchase of depreciable items during 1997.
>
> - Travel- Please provide Airline tickets, hotel bills, charge statements and cancelled checks to verify expenses.
>
> - Legal fees- Documentation is needed to support the amount deducted.
>
> Please provede [sic] an explaination [sic] of why the expenses were deducted on Schedule C when Dr. Megibow is a W-2 employee?

In August of 2000 Mr. Gendler sent to Ms. O'Connell a one-page letter making the following statement:

> Please note that Dr. Megibow acts in an independent contractor capacity at N. Y. U. Medical Center.  In addition to practicing medicine for these people, he lectures and promotes himself, which enables him to obtain patient referrals.  He writes and publishes articles and lectures, in addition to practicing medicine.  The expenses incurred on his Schedule C are not reimbursed by anyone and are expenses of his doing business that are necessary in the normal course of doing business.  I hope this explains the presentation of Dr. Megibow's tax information.

On August 23, 2001, a third Form 4564, "Request Number 3", was issued with respect to 1997.  This Form 4564 repeated verbatim the previous Request Number 2 for 1997 as regards documentation supporting the claimed depreciation, travel expenses, and legal fees, and added requests for documentation

supporting Schedule C items for car and truck expenses, professional dues, telephone and communications, local travel, and CPE.

Meanwhile, Schedule C deductions had likewise become a focus of the audit for 1998 and 1999, as evidenced by a Form 4564 dated May 14, 2001, identified as "Request Number 2" for 1998 and 1999, requesting documentation with respect to, inter alia, "All Business expenses listed on Schedule C for both years" and "All travel and entertainment expenses for both years listed on Schedule C including a diary showing your travel itinerary".

On January 22, 2002, a final examination meeting was held with Mr. Gendler. The record indicates that as of that date, petitioner had not provided further materials responsive to the above-described requests for substantiation. At the meeting, Mr. Gendler, acting under direction from petitioner's counsel, Anthony Bentley (Mr. Bentley), declined to consent to an extension of the time for assessment. As a result, a decision was made to close the case based on the impending statute of limitations. Shortly after the meeting, Mr. Gendler apparently provided copies of Amex statements for 1997 and certain bank statements, but these items were not analyzed or incorporated in the adjustments on account of the decision to close the case.

The notice of deficiency underlying this proceeding was issued on February 25, 2002. Among other things, the notice

disallowed the business expenses claimed by petitioner on Schedules C, with the exception of the amounts shown as fees remitted to NYU. Additional correspondence sent by Mr. Bentley after that date was reviewed by Ms. O'Connell but was determined not to be pertinent to the adjustments in the statutory notice.

The petition in this case was filed on May 9, 2002, and trial was held on May 8, 2003. Mr. Bentley represented petitioner. The stipulated joint exhibits consist of copies of petitioner's 1997, 1998, and 1999 tax returns; the notice of deficiency; and the March 9, 1998, letter from NYU Medical Center. Mr. Bentley introduced into evidence two additional exhibits.

The first is a group of documents purporting to represent production from respondent's disclosure officer received by Mr. Bentley in response to one of petitioner's FOIA requests. The second is a similar group of documents purporting to represent production from the U.S. Attorney for the Southern District of New York received by Mr. Bentley in response to one of petitioner's FOIA requests. As such, the exhibits were proffered as representing the contents of respondent's administrative files with respect to the examination of petitioner's 1997 through 1999 returns. No further explanation was offered by Mr. Bentley.

After introducing the two exhibits into evidence, Mr. Bentley directed the Court's attention to petitioner's signature on his three tax returns and, pointing out that perjury is a felony in New York, stated as follows:

> The reason that I bring this to your Honor's attention is to invoke a presumption under the criminal law of innocence for someone who is accused or suggested of having committed a crime, certainly a felony. The reason that I raise that presumption is so that I can introduce the tax returns as being the initial showing of credible evidence in petitioner's case to the effect that he is entitled to the deductions that he has taken, because what he is presenting under penalty of perjury is a statement to the effect that he's entitled to take those deductions, has paid what he has said that he has paid, and that such deductions are appropriate and not--the tax code.
> Having said all of those things, petitioner rests.

Petitioner did not testify, nor were any witnesses called on his behalf. Respondent called Ms. O'Connell, who testified regarding the examination of petitioner's returns. Respondent also introduced four additional exhibits pertaining to the examination. At the conclusion of trial, a briefing schedule was set with simultaneous opening briefs due July 28, 2003, and reply briefs due September 11, 2003.

On July 24, 2003, the Court received from petitioner a document entitled "Petitioner's Motion To Extend Time To File Brief, For Partial Summary Judgment, and To Reopen the Record", with accompanying exhibits. This document was returned to petitioner unfiled, with the explanation that it represented an improper joinder of motions under Rule 54 and an inappropriate

attempt to submit documents in the nature of evidence outside the trial setting and without stipulation.

On July 31, 2003, a document titled as a motion to extend time to file briefs was filed by petitioner. The preamble asked that the time to file opening briefs be extended in order to allow for resubmission of the previous motion for summary judgment and to reopen the record. By order dated August 4, 2003, the Court granted petitioner's motion in that the time to file petitioner's opening brief was extended to August 18, 2003, denied the motion in all other respects, and directed that the time for answering briefs be extended to October 2, 2003.

Petitioner's opening brief was filed on August 20, 2003 (having been postmarked timely). On October 2, 2003, respondent filed respondent's reply brief, and petitioner filed a motion to extend time to file briefs. Pursuant to Court order, respondent filed a response to petitioner's motion on October 27, 2003. Additional correspondence received from petitioner on October 28, 2003, was filed as a supplement to petitioner's motion, and by order dated November 5, 2003, petitioner's motion, as supplemented, was denied.

OPINION

I.  Preliminary Matters

A.  Petitioner's Motions for Partial Summary Judgment and To Reopen the Record

On brief, petitioner states that he reasserts and resubmits his previous motions for partial summary judgment and to reopen the record.  These requests were denied by means of the Court's August 4, 2003, order, and we decline to modify that disposition for the reasons described briefly below.

Summary judgment is intended to expedite litigation and to avoid unnecessary and expensive trials.  FPL Group, Inc. v. Commissioner, 116 T.C. 73, 74 (2001); Fla. Peach Corp. v. Commissioner, 90 T.C. 678, 681 (1988).  Rule 121(a) allows a party to move "for a summary adjudication in the moving party's favor upon all or any part of the legal issues in controversy." Rule 121(b) directs that a decision on such a motion shall be rendered "if the pleadings, answers to interrogatories, depositions, admissions, and any other acceptable materials, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that a decision may be rendered as a matter of law."

Petitioner's motion for summary judgment asked for "an order adjudicating that a taxpayer's receipt of a W-2 form does not, without more, preclude deductibility of legitimate business

expenses presented on a Schedule C form." Petitioner asserted that respondent's disallowance of his claimed expenditures was premised on this concept.

As an initial observation, we note that presenting the issue in this abstract manner amounts to little more than a request for an advisory opinion as to Federal tax law. This Court does not issue advisory opinions in a hypothetical context. The Court's rulings are restricted to actual cases and controversies.

Moreover, petitioner's motion was and is properly rejected because, regardless of the accuracy of the principle he seeks to establish, the purposes of summary judgment would not be served by a ruling thereon. Trial, having already occurred, would not be avoided. More importantly, even an order in petitioner's favor would in no way expedite resolution of this case. Substantiation would still be required for any allowable expenses.

The notice of deficiency expressly provides that the Schedule C deductions for 1997, 1998, and 1999 were disallowed "since you failed to establish that the disallowed portion of the claimed deductions were paid, and if paid, qualified as ordinary and necessary business expenses, or that the expenditures were made for the purposes designated." Because the substantiation issue under the actual facts of this case would remain before us,

nothing could be gained toward disposition by granting petitioner's motion.  We affirm our earlier denial.

Reopening the record for the submission of additional evidence is a matter within the discretion of the trial court. Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321, 331 (1971); Butler v. Commissioner, 114 T.C. 276, 286-287 (2000). The standard for doing so may be summarized as follows:  "A court will not grant a motion to reopen the record unless, among other requirements, the evidence relied on is not merely cumulative or impeaching, the evidence is material to the issues involved, and the evidence probably would change the outcome of the case." Butler v. Commissioner, supra at 287.[3]

Petitioner's motion to reopen the record seeks to have the Court admit his bank and credit card statements for 1997 through 1999.  These proffered items fall short of the foregoing standard.  Even if admitted, the documents would not alter the outcome in this case.  The 3 years of financial statements in

---

[3] The Court notes that prior to the trial of this case, we contacted counsel for petitioner and respondent by conference calls and implored the parties to acknowledge and obey the Court's standing pretrial order and the Tax Court Rules of Practice and Procedure.  These items require the parties to stipulate facts and documents not reasonably in dispute and to exchange before trial documents to be introduced as evidence.  In addition, the trial of this case was delayed for an hour to afford petitioner an eleventh hour opportunity to provide documents to respondent; this effort resulted in petitioner's two exhibits', described supra in text, being admitted at trial despite respondent's objections.

petitioner's name reflect hundreds of transactions, a large percentage of which appear personal in nature, and petitioner has not suggested any way of identifying those which allegedly represent business expenses. The admission of these materials would therefore do little, if anything, to provide the requisite substantiation for petitioner's expenditures.

Furthermore, even if the statements offered support for the disputed deductions, we would deny their admission on grounds of prejudice to respondent. By submitting the documents after trial, petitioner deprived respondent of any opportunity to examine or question them during the proceeding. Given the background in this case, we cannot countenance such tardiness. We again affirm our previous denial.

B. Petitioner's Argument That the Notice of Deficiency is Time Barred

In his opening brief, petitioner puts forward the argument that the notice of deficiency is time barred because his representative lacked authority to extend the statute of limitations for assessment. This issue was not mentioned in the petition, in petitioner's trial memorandum, or at trial.

It is well settled that a matter raised for the first time on brief will not be considered when to do so would prejudice the opposing party. DiLeo v. Commissioner, 96 T.C. 858, 891-892 (1991), affd. 959 F.2d 16 (2d Cir. 1992); Markwardt v.

Commissioner, 64 T.C. 989, 997 (1975).  Such prejudice arises when the opposing party would be prevented from presenting evidence that might have been offered if the issue had been timely raised, or the opposing party would otherwise be surprised and placed at a disadvantage.  DiLeo v. Commissioner, supra at 891-892; Markwardt v. Commissioner, supra at 997.  It is also the rule of this Court that claims related to the statute of limitations are affirmative defenses that must be pleaded or proved at trial and upon which the taxpayer bears the burden of proof.  Rules 39, 142(a); Woods v. Commissioner, 92 T.C. 776, 779 (1989).

We conclude that the foregoing principles render consideration of petitioner's argument inappropriate here.  At minimum, the posture in which this issue has arisen deprived respondent of the opportunity to introduce evidence concerning petitioner's agreement to extend the statute and the authority of his representative.  Additionally, petitioner has submitted no materials to support his allegations; he has merely indicated that he is attempting to obtain such proof through an FOIA suit against respondent.

We surmise from the grounds recited in his motion to extend the time for filing answering briefs that he would seek to proffer evidence and argument on this matter using his reply brief as the vehicle, which would again raise complications

related to reopening the record. In these circumstances, our rules do not support addressing the merits of petitioner's statute of limitations claim.[4]

C. Petitioner's Estoppel Argument

In both his trial memorandum and his brief, petitioner frames one of the issues as follows: "Whether respondent is estopped from asserting that petitioner has failed adequately to support the disallowed deductions." His argument on brief under the heading "Estoppel" then reads in its entirety:

> 5. Federal Courts, including administrative courts of limited jurisdiction, are courts of equity.
>
> 6. Respondent's audit changes taken as a whole essentially shift petitioner's deductions from Schedule C to Schedule A, based on a premise contrary to the course of dealing of the parties over a period approaching ten years: one which has previously been litigated and established; i.e., that respondent acknowledges that petitioner is entitled to Schedule C deductions as an aspect of his professional activities.
>
> 7. Respondent's position initially appeared grounded in the untenable premise that "if you get a W-2, you can't use a Schedule C." That position morphed, at trial, into "this is just a substantiation case."

It is less than clear from the foregoing statements whether petitioner's argument rests on equitable estoppel, collateral

_____

[4] We note that respondent disputes the merits of petitioner's argument in respondent's opposition to petitioner's motion to extend the time to file briefs. Respondent also attaches to the opposition copies of three Forms 2848, Power of Attorney and Declaration of Representative, and a copy of the disputed Form 872, Consent to Extend the Time to Assess Tax, which together reflect a proper extension of the statute.

estoppel, or some combination of the two.  For completeness, we shall summarize why neither doctrine is applicable here.

Equitable estoppel is a judicial doctrine that operates to preclude a party from denying its own acts or representations that induced another to act to his or her detriment.  Wilkins v. Commissioner, 120 T.C. 109, 112 (2003); Hofstetter v. Commissioner, 98 T.C. 695, 700 (1992).  In tax contexts, equitable estoppel will be applied against the Government only with the utmost caution and restraint and upon the establishment of prerequisite elements:  (1) A false representation or wrongful, misleading silence by the party against whom the estoppel is claimed; (2) an error in a statement of fact and not in an opinion or statement of law; (3) ignorance of the true facts by the taxpayer; (4) reasonable reliance by the taxpayer on the acts or statements of the one against whom estoppel is claimed; and (5) adverse effects suffered by the taxpayer from the acts or statements of the one against whom estoppel is claimed.  Wilkins v. Commissioner, supra at 112; Norfolk S. Corp. v. Commissioner, 104 T.C. 13, 60 (1995), affd. 140 F.3d 240 (4th Cir. 1998); see also Lignos v. United States, 439 F.2d 1365, 1368 (2d Cir. 1971).

Here, the record fails to show the existence of any of the required elements for equitable estoppel.  Petitioner does not identify, nor do we perceive, any particular statements or

conduct by respondent that could reasonably be interpreted as false statements or misleading silence with respect to petitioner's entitlement to his claimed deductions.  On the contrary, the course of events beginning in the audit and ultimately reflected in the reasons for disallowance expressed in the notice of deficiency emphasized the need for substantiation.

Collateral estoppel exists for "the dual purpose of protecting litigants from the burden of relitigating an identical issue and of promoting judicial economy by preventing unnecessary or redundant litigation."  Meier v. Commissioner, 91 T.C. 273, 282 (1988); see also Montana v. United States, 440 U.S. 147, 153-154 (1979); Parklane Hosiery Co. v. Shore, 439 U.S. 322, 326 (1979).  In general, the doctrine of collateral estoppel, also referred to as issue preclusion, forecloses relitigation of issues actually litigated and necessarily decided in a prior suit.  Parklane Hosiery Co. v. Shore, supra at 326 n.5; Meier v. Commissioner, supra at 282; Peck v. Commissioner, 90 T.C. 162, 166 (1988), affd. 904 F.2d 525 (9th Cir. 1990).

This Court, expanding upon three factors identified by the Supreme Court in Montana v. United States, supra at 155, has set forth five prerequisites necessary for the application in factual contexts of collateral estoppel:

> (1) The issue in the second suit must be identical in all respects with the one decided in the first suit.
> (2) There must be a final judgment rendered by a court of competent jurisdiction.

(3) Collateral estoppel may be invoked against parties and their privies to the prior judgment.
(4) The parties must actually have litigated the issues and the resolution of these issues must have been essential to the prior decision.
(5) The controlling facts and applicable legal rules must remain unchanged from those in the prior litigation. [Peck v. Commissioner, supra at 166-167; citations omitted.]

These prerequisites are not met in the instant case. No legal proceeding has ever addressed, much less established, that petitioner is entitled to the Schedule C deductions claimed for 1997, 1998, and 1999. While petitioner has litigated a previous tax year, resulting in Megibow v. Commissioner, T.C. Memo. 1998-455, with respect to 1993, that proceeding provides neither a legal nor a factual basis for applying collateral estoppel here.

From a legal standpoint, income taxes are levied on an annual basis, such that each year represents a new liability and a separate cause of action. Commissioner v. Sunnen, 333 U.S. 591, 598-600 (1948); Fla. Peach Corp. v. Commissioner, 90 T.C. at 682. Given this principle, collateral estoppel would not operate to establish entitlement to deductions in one year based merely on an allowance of similar deductions in a different year or years. See Barmes v. Commissioner, T.C. Memo. 2001-155 (rejecting attempts to apply collateral estoppel to depreciation deductions based on a prior litigated tax year), affd. 89 AFTR 2d 2002-2249, 2002-1 USTC par. 50,312 (7th Cir. 2002); see also Adolph Coors Co. v. Commissioner, 519 F.2d 1280, 1283 (10th Cir.

1975) (rejecting an attempt to apply collateral estoppel even though the exact issue was raised in a prior Tax Court proceeding but, because the Commissioner abandoned the issue during the litigation, no judicial determination or findings were made), affg. 60 T.C. 368 (1973).

From a factual standpoint, petitioner's entitlement to Schedule C expenses comparable to those claimed here was, with one exception, not litigated in Megibow v. Commissioner, T.C. Memo. 1998-455. As to the one exception, this Court sustained respondent's denial of deductions claimed by petitioner for business-related legal fees. Id. Accordingly, the case at bar presents no grounds for applying either equitable or collateral estoppel.

## II. Deficiencies and Penalties

### A. Burden of Proof

As a general rule, determinations by the Commissioner are presumed correct, and the taxpayer bears the burden of proving otherwise. Rule 142(a). Section 7491 may operate, however, in specified circumstances to place the burden on the Commissioner. Section 7491 is applicable to court proceedings that arise in connection with examinations commencing after July 22, 1998, and reads in pertinent part:

SEC. 7491. BURDEN OF PROOF.

(a) Burden Shifts Where Taxpayer Produces Credible Evidence.--

(1) General rule.--If, in any court proceeding, a taxpayer introduces credible evidence with respect to any factual issue relevant to ascertaining the liability of the taxpayer for any tax imposed by subtitle A or B, the Secretary shall have the burden of proof with respect to such issue.

(2) Limitations.--Paragraph (1) shall apply with respect to an issue only if--

(A) the taxpayer has complied with the requirements under this title to substantiate any item;

(B) the taxpayer has maintained all records required under this title and has cooperated with reasonable requests by the Secretary for witnesses, information, documents, meetings, and interviews; * * *

* * * * * * *

(c) Penalties.--Notwithstanding any other provision of this title, the Secretary shall have the burden of production in any court proceeding with respect to the liability of any individual for any penalty, addition to tax, or additional amount imposed by this title. [See also Internal Revenue Service Restructuring & Reform Act of 1998, Pub. L. 105-206, sec. 3001(c), 112 Stat. 727, regarding effective date.]

Section 7491 is applicable here in that the examinations in this case began after the statute's effective date.

With respect to the income adjustments at issue, petitioner has not met the prerequisites of section 7491(a)(2) for placing the burden on respondent. The record reflects a failure on petitioner's part to substantiate items, to show that he maintained adequate books and records, and to cooperate with respondent. With respect to the accuracy-related penalty, the

Commissioner satisfies the section 7491(c) burden of production by "[coming] forward with sufficient evidence indicating that it is appropriate to impose the relevant penalty" but "need not introduce evidence regarding reasonable cause, substantial authority, or similar provisions."  Higbee v. Commissioner, 116 T.C. 438, 446 (2001).  Rather, "it is the taxpayer's responsibility to raise those issues."  Id.  Because, as will be more fully detailed infra, respondent here has introduced sufficient evidence to render the section 6662(a) penalty at least facially applicable, the burden rests on petitioner to show why it should not be applied.

B.  Business Expense Deductions

Deductions are a matter of "legislative grace", and "a taxpayer seeking a deduction must be able to point to an applicable statute and show that he comes within its terms."  New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934); see also Rule 142(a).  As a general rule, section 162(a) authorizes a deduction for "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business".  An expense is ordinary for purposes of this section if it is normal or customary within a particular trade, business, or industry.  Deputy v. du Pont, 308 U.S. 488, 495 (1940).  An expense is necessary if it is appropriate and helpful for the

development of the business.  Commissioner v. Heininger, 320 U.S. 467, 471 (1943).

The breadth of section 162(a) is tempered by the requirement that any amount claimed as a business expense must be substantiated, and taxpayers are required to maintain records sufficient therefor.  Sec. 6001; Hradesky v. Commissioner, 65 T.C. 87, 89-90 (1975), affd. 540 F.2d 821 (5th Cir. 1976); sec. 1.6001-1(a), Income Tax Regs.  When a taxpayer adequately establishes that he or she paid or incurred a deductible expense but does not establish the precise amount, we may in some circumstances estimate the allowable deduction, bearing heavily against the taxpayer whose inexactitude is of his or her own making.  Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930).  There must, however, be sufficient evidence in the record to provide a basis upon which an estimate may be made and to permit us to conclude that a deductible expense, rather than a nondeductible personal expense, was incurred in at least the amount allowed.  Williams v. United States, 245 F.2d 559, 560 (5th Cir. 1957); Vanicek v. Commissioner, 85 T.C. 731, 742-743 (1985).

Furthermore, business expenses described in section 274 are subject to rules of substantiation that supersede the doctrine of Cohan v. Commissioner, supra.  Sanford v. Commissioner, 50 T.C. 823, 827-828 (1968), affd. 412 F.2d 201 (2d Cir. 1969); sec.

1.274-5T(a), Temporary Income Tax Regs., 50 Fed. Reg. 46014 (Nov. 6, 1985).  Section 274 provides that no deduction shall be allowed for, among other things, traveling expenses, entertainment expenses, meal expenses, gifts, and expenses with respect to listed property (as defined in section 280F(d)(4) and including passenger automobiles, computer equipment, and cellular telephones) "unless the taxpayer substantiates by adequate records or by sufficient evidence corroborating the taxpayer's own statement":  (1) The amount of the expenditure or use; (2) the time and place of the expenditure or use, or date and description of the gift; (3) the business purpose of the expenditure or use; and (4) in the case of entertainment or gifts, the business relationship to the taxpayer of the recipients or persons entertained.  Sec. 274(d).

In seeking to establish petitioner's entitlement to deduct the business expenses disallowed by respondent, petitioner's counsel at trial introduced two exhibits and then pointed out that petitioner's returns were signed under penalty of perjury. As to the exhibits, they merely represent the contents of administrative files received by Mr. Bentley in response to FOIA requests and are bereft of any materials that would adequately substantiate the claimed deductions.  Although the exhibits do show that certain information with respect to the expenses was given to respondent, this information falls far short of meeting

the heightened substantiation requirements of section 274, where applicable, or of enabling us to make any reasonable estimate under Cohan v. Commissioner, supra.  Accordingly, we reject petitioner's claim on brief that evidence of substantiation was provided to respondent prior to January of 2002.

We likewise give little weight to petitioner's statement on brief that evidence of substantiation tendered after January of 2002 would not have been considered by respondent.  Petitioner has at no time shown either an ability or a willingness to provide additional relevant material.  He neither testified at trial nor offered any pertinent substantiating exhibits. Moreover, the only other information tendered to the Court, through petitioner's tardy motion to reopen the record, would, even if accepted and as previously explained, have failed to demonstrate entitlement to any further deductions.  The materials do not tie any specific expense to a particular for-profit business or investment endeavor.

With respect to petitioner's reliance at trial on having filed returns signed under penalty of perjury, petitioner apparently reiterates this position on brief, as follows:

> Petitioner duly filed his 1998 and 1999 income tax returns which were signed under penalty of perjury by petitioner, timely filed pursuant to 26 United States Code § 7502 through the United States mails, and received in evidence; respondent failed to demonstrate that any request for substantiation of the deductions thereupon taken was made of petitioner.  The deductions were therein not properly disallowed as

unsubstantiated, and the additions to tax assessed for the said years accordingly improper.

As a threshold matter, we dispute any suggestion by petitioner that substantiation was not sought by respondent for the expenses claimed on the 1998 and 1999 returns. As revealed in the exhibits introduced by petitioner and detailed more fully in our above factual discussion of the administrative process, substantiation was a focus of respondent's examination for all three of the years in issue.

More importantly, and contrary to petitioner's assertion, it is axiomatic that neither tax returns themselves, nor the execution of such forms under penalty of perjury, establishes the truth of items recited therein. Lawinger v. Commissioner, 103 T.C. 428, 438 (1994); Wilkinson v. Commissioner, 71 T.C. 633, 639 (1979); Roberts v. Commissioner, 62 T.C. 834, 837 (1974). Petitioner's reliance on his tax returns is entirely misplaced. Thus, in absence of any evidence reflecting the propriety of the business expense deductions claimed by petitioner, we sustain their disallowance for lack of substantiation.

C. Section 6662 Penalty

Subsection (a) of section 6662 imposes an accuracy-related penalty in the amount of 20 percent of any underpayment that is attributable to causes specified in subsection (b). Subsection (b)(1) of section 6662 then provides that among the causes

justifying imposition of the penalty is negligence or disregard of rules or regulations.

"Negligence" is defined in section 6662(c) as "any failure to make a reasonable attempt to comply with the provisions of this title", and "disregard" as "any careless, reckless, or intentional disregard."  Caselaw similarly states that "'Negligence is a lack of due care or the failure to do what a reasonable and ordinarily prudent person would do under the circumstances.'"  Freytag v. Commissioner, 89 T.C. 849, 887 (1987) (quoting Marcello v. Commissioner, 380 F.2d 499, 506 (5th Cir. 1967), affg. on this issue 43 T.C. 168 (1964) and T.C. Memo. 1964-299), affd. 904 F.2d 1011 (5th Cir. 1990), affd. 501 U.S. 868 (1991).  Pursuant to regulations, "'Negligence' also includes any failure by the taxpayer to keep adequate books and records or to substantiate items properly."  Sec. 1.6662-3(b)(1), Income Tax Regs.

An exception to the section 6662(a) penalty is set forth in section 6664(c)(1) and reads:  "No penalty shall be imposed under this part with respect to any portion of an underpayment if it is shown that there was a reasonable cause for such portion and that the taxpayer acted in good faith with respect to such portion."

Regulations interpreting section 6664(c) state:

> The determination of whether a taxpayer acted with reasonable cause and in good faith is made on a case-by-case basis, taking into account all pertinent facts and circumstances. * * * Generally, the most important

> factor is the extent of the taxpayer's effort to assess the taxpayer's proper tax liability. * * * [Sec. 1.6664-4(b)(1), Income Tax. Regs.]

Reliance upon the advice of an expert tax preparer may, but does not necessarily, demonstrate reasonable cause and good faith in the context of the section 6662(a) penalty. Id.; see also United States v. Boyle, 469 U.S. 241, 251 (1985); Freytag v. Commissioner, supra at 888. Such reliance is not an absolute defense, but it is a factor to be considered. Freytag v. Commissioner, supra at 888.

In order for this factor to be given dispositive weight, the taxpayer claiming reliance on a professional must show, at minimum, that (1) the preparer was supplied with correct information and (2) the incorrect return was a result of the preparer's error. See, e.g., Westbrook v. Commissioner, 68 F.3d 868, 881 (5th Cir. 1995), affg. T.C. Memo. 1993-634; Cramer v. Commissioner, 101 T.C. 225, 251 (1993), affd. 64 F.3d 1406 (9th Cir. 1995); Ma-Tran Corp. v. Commissioner, 70 T.C. 158, 173 (1978); Pessin v. Commissioner, 59 T.C. 473, 489 (1972).

As previously indicated, section 7491(c) places the burden of production on the Commissioner. The notice of deficiency issued to petitioner generally asserted applicability of the section 6662(a) penalty on account of negligence or disregard, substantial understatement, and/or substantial valuation misstatement. See sec. 6662(b). Respondent at trial and on

brief has addressed only negligence or disregard of rules or regulations as the basis for the penalty, and we shall do likewise.

We conclude that respondent has met the section 7491(c) burden of production with respect to the negligence penalty. The evidence adduced in this case reveals that petitioner has failed to keep adequate books and records and properly to substantiate reported items. Petitioner, in turn, has not shown that he acted with reasonable cause and in good faith as to the claimed items. His argument on brief with regard to the penalties reads as follows:

> Petitioner has done everything he reasonably could be expected to do to pay his taxes when due, tender security for over 100% of the claimed "additions" to taxes dreamed up by respondent under any theory, and petitioner's efforts at cooperation, offers of settlement, coupled with tendered funds, have been refracted or ignored at every turn, including those within the context of these proceedings, such that the history can be viewed ultimately as a denial of petitioner's procedural due process rights.

> Petitioner is entitled to minimize his income taxes under the Internal Revenue Code.

This picture is belied by the record in this case. Contrary to petitioner's suggestions of cooperation and forthcoming behavior, his history before the Internal Revenue Service and this Court is replete with instances where petitioner, or the representative acting on his behalf, has delayed, ignored, or otherwise hindered repeatedly offered opportunities for

communication and exchange of pertinent information.  Conversely, the record is devoid of any evidence reflecting offers of settlement or payment, nor would such offers bear in any event on whether petitioner was negligent at the point in time when he filed his Federal income tax return and underpaid his taxes.  On these facts, petitioner's intimations of a denial of due process are not well taken.

Finally, petitioner is entitled to minimize income taxes only to the extent consistent with law.  See United States v. Cumberland Pub. Serv. Co., 338 U.S. 451, 454-456 (1950).  He clearly overstepped that boundary here and has not shown a reasonable basis for doing so.  The Court sustains respondent's imposition of the section 6662 penalty.

To reflect the foregoing,

Decision will be entered

for respondent.