**Hugh S. HUNT**

v.

**UNITED STATES of America.**

**NO. Civ. JFM–94–3553.**

United States District Court,
D. Maryland.

April 6, 2000.

Hugh S. Hunt, Potomac, MD, plaintiff pro se.

Charles Hayden Keen, Washington, D.C., United States Attorney's Office, Baltimore, MD, for defendant.

## OPINION

MOTZ, District Judge.

Hugh S. Hunt has brought this action against the United States asserting various claims arising out of the settlement of a Tax Court case involving income taxes paid in the 1980s.[1] I dismissed some of the claims in an opinion issued on November 12, 1997. Based upon concessions made by the government, on January 3, 2000, I entered partial summary judgment in favor of Hunt as to portions of his claims for the 1982 and 1983 tax years. Discovery is presently proceeding as to Hunt's claim for damages under 26 U.S.C. §§ 7432–7433. Now before me are cross-motions for summary judgment on Hunt's claim for interest on his refund for the 1982 tax year.

### I.

#### A.

Hunt filed a petition in the U.S. Tax Court to contest deficiency notices for tax year ("TY") 1983 and TY 1985. The Tax Court case was settled in principle in October 1993, and initial settlement documents were filed in the Tax Court. The final settlement documents were filed in the Tax Court on December 20, 1993. The figures upon which the settlement was based resulted in a net operating loss ("NOL") that, carried back to 1982, entitled Hunt to a refund in the amount of $57,571. The principal amount of that refund was eventually paid to Hunt (by credits applied against taxes due for other years and a refund check for the balance.)

As indicated above, the question presented by the pending cross-motions for summary judgment is whether Hunt is entitled to interest on the $57,501 refund.[2]

---

1. Unfortunately, the case has become the oldest on my docket. This is due to a variety of factors, including the arcane nature of some of the matters in dispute, occasional ineffective advocacy, and my own inability to grasp easily all of the issues. Significantly compounding the problem, however, has been the fact that until very recently, the government was basing many of its arguments concerning several of Hunt's ancillary claims upon erroneous information, thus making totally incomprehensible that which was inherently perplexing. In large measure at least this information has now been corrected, and the litigation has been able to proceed more smoothly and expeditiously.

2. Hunt claims only what is known as "restrictive interest," that is interest running not from the date he paid his taxes in 1982 but from April 15, 1986, the due date of the TY 1985 return creating the NOL that gave rise to the 1982 refund. See § 26 U.S.C. § 6611(f)(3)(B)(1)(II).

The government contends that the refund was paid within 45 days of Hunt's submission of a Form 1040X formally claiming a refund and that therefore no interest is due pursuant to §§ 6611(e) and 6611(f) of the Internal Revenue Code. Hunt makes two alternative arguments in response. First, he contends that payment of interest on the refund was part of the settlement agreement he reached with the IRS. Second, he asserts that the IRS is equitably estopped from denying him payment of interest on the refund.[3] It is with these respective contentions in mind that the remainder of the facts should be read.

### B.

Hunt was represented by Paula Wolff, and the IRS was represented by Ruud Duvall, a trial attorney, during the settlement negotiations. In a memorandum he sent to Wolff in early August, 1993, Duvall expressly stated that although his recommendations concerning settlement were usually approved, he lacked final settlement authority and that such authority resided with the Assistant District Director. Duvall also understood, according to deposition testimony he has given, that his office's settlement authority was limited to TY 1983 and TY 1985, the years specifically involved in the Tax Court suit. (See Duvall Dep. at 5.) More particularly, Duvall perceived that the parties were settling issues presented in the Tax Court case and that an NOL carry-back was not part of the settlement. *See id.* at 15, 39. Thus, when asked "[d]id the formal settlement cover anything regarding 1982," Duvall replied, "No. It was a year not before the Court. It was not something I would have negotiated about." *Id.* at 8.

Hunt's perspective was quite different. He was settling the case for a specific amount of money of which (as he made the IRS aware) he was in critical need. Hunt recalls that discussion of the interest due on the 1982 refund was part of the settlement negotiations from the outset. Du-

vall's recollection is not the same. He does not remember having discussed interest on the 1982 refund until after settlement was reached in October, *see id.* at 7, and he is clear that he never expressly advised Hunt that he would receive such interest as part of the settlement, *see id.* at 39–40. However, Duvall believes that during the course of the negotiations, he—like Hunt—was acting under the assumption that Hunt would receive the interest. *See id.* at 30, 40.

On November 19, 1993, Hunt filed an affidavit in the Tax Court (in response to an NOL computation made by the IRS) in which he stated that he "understood that [he] was to receive as a consequence of the Settlement a complete refund of [his] 1982 taxes paid, plus interest due thereon to the date of refund." (Hunt Aff. at 1.) On the same day Hunt filed this affidavit, Wolff wrote a letter to Duvall in which she stated:

> Hugh Hunt is very distressed with the manner in which the IRS has indicated it will treat Hunt's various NOL claims in this settlement. Clearly, throughout the negotiations between the IRS and Hunt in this case, and particularly in the weeks just prior to reaching the Stipulation of Settlement which was placed on the record in the Tax Court, Hunt emphasized that he was relying on certain favorable NOL treatment as a major aspect of the settlement of all issues by parties in this case.
>
> *Specifically, it was well known by parties and counsel that Hunt was relying on his receiving a refund of all 1982 taxes paid plus accumulated interest thereon as a result of the NOL carry-backs to 1982.*

(Letter from Wolff to Duvall of 11/19/93 at 1 (emphasis added).)

Hunt's affidavit was submitted, and Wolff's letter written, before the final settlement documents were filed with the Tax

---

**3.** Hunt also maintains that the 1985 NOL giving rise to the 1982 refund was an IRS adjustment to which § 6611(e) does not ap-

ply. In light of my finding in favor of Hunt on the estoppel question, I need not reach that issue.

Court. Moreover, it is undisputed that prior to the filing of those documents, George Bryant, a revenue agent, had prepared what Duvall in his deposition characterized as "settlement computations," (Duvall Dep., at 12), which included interest on the 1982 refund. The IRS, however, eventually refused to pay the interest. Sometime after December 20, 1993, when the final settlement papers were filed in the Tax Court, Hunt was advised by the IRS that he would have to file a Form 1040X for TY 1982. He did so on March 12, 1994. Sixteen days later, on March 28, 1994, the IRS paid the refund by crediting Hunt for taxes owed in other years and sending him a check for the balance due on the refund after the credits were made.[4] Since this payment was made within 45 days of the filing of the Form 1040X, the IRS took the position that no interest was due pursuant to §§ 6611(e) and 6611(f) of the Code.

## II.

■ One of the rulings I made in my November 12, 1997 opinion was that Hunt's claim based upon all alleged settlement agreement pertaining to TY 1982 is fatally deficient. I remain of the view that this ruling was correct. As I previously held, if any such agreement in fact existed, it could not have been part of the formal settlement agreement before the Tax Court since the Tax Court's jurisdiction is limited to years for which a deficiency notice was issued. I do not understand

Hunt to quarrel with this holding. Rather, his position is that the settlement agreement he reached with the IRS was of broader scope, encompassing not only the tax years involved in the claim before the Tax Court (1983 and 1985) but for TY 1982 as well since that year was affected by the NOL calculation made for TY 1985.

Were this a case involving private parties to which ordinary contract principles apply, Hunt's contention would have substantial force and be at least sufficient to withstand the government's motion for summary judgment. Although Duvall pointed out to Wolff in his memorandum of August 4, 1993, that he lacked final settlement authority, a fact-finder could conclude that during the subsequent course of events there was a meeting of the minds that interest would be paid on the 1982 refund and that the IRS obtained a benefit of the bargain by settlement and termination of the Tax Court proceeding. In this instance, however, a different rule applies. Sections 7121 and 7122 provide that any agreements relating to a taxpayer's liability must be in writing. Here, Hunt can point to no writing that memorializes the agreement he alleges to have existed.[5]

## III.

The Supreme Court has expressly reserved ruling on the question of whether estoppel may ever run against the government. *See Heckler v. Community Health Services*, 467 U.S. 51, 60, 104 S.Ct. 2218, 81

4. From the outset of this litigation, Hunt claimed that the IRS made errors in determining the taxes due for the years against which part of the 1982 refund was credited and that these errors caused the amount of his refund check to be too small. This was one of the ancillary disputes that made the case so confusing. The government now concedes that Hunt was correct, and this claim has been resolved in his favor. The only lingering effect of the dispute is that Hunt makes a subsidiary argument that although he has finally been paid full restrictive interest (as well as the principal) on the amount of the refund improperly credited to other taxes, the IRS is not entitled to the benefit of sections 6611(e) and 6611(f) at all because of its fail-

ure to pay the full amount of the refund within 45 days. In light of my ruling on the equitable estoppel issue, I need not decide this issue. I note, however, that I do not find Hunt's argument persuasive. The requirement (acknowledged by the government) to pay interest on the amount wrongfully withheld from a refund provides sufficient incentive for the IRS not to make wrongful withholdings.

5. *Dorchester Industries, Inc. v. Commissioner*, 1997 WL 210795, 108 T.C. 320 (1997), relied upon by Hunt, is distinguishable. Although the parties there had not entered into a formal agreement, there was written correspondence reflecting their agreement.

L.Ed.2d 42 (1984). The Fourth Circuit has held that the government cannot be estopped where a taxpayer asserts that he relied upon advice allegedly given him by an IRS agent to avoid his statutory or regulatory obligations. *See Miller v. United States,* 949 F.2d 708, 712 (4th Cir. 1991). The soundness of that holding is clear. If the rule were otherwise, the certainty and uniformity provided by the statutory and regulatory scheme would be undermined.

In this case, however, Hunt has not sought to avoid any duty the law imposes upon him. Rather, he contends that he was misled by the government, consciously or unconsciously, into giving up a right of his own, that is the right to pursue litigation of the Tax Court case rather than settling it. This contention is wholly supported by the record. The evidence is overwhelming that by December 20, 1993—the date on which the final settlement documents were filed in the Tax Court—Hunt was relying upon receiving interest on the 1982 refund and the IRS knew that he was doing so. Wolff's November 19, 1993 letter to Duvall, Hunt's affidavit filed in the Tax Court, Bryant's preparation of "settlement computations" that included interest on the 1982 refund, and Duvall's own deposition testimony make these facts unmistakably clear. Whether or not there had been a meeting of the minds on the issue, the IRS went forward with finalizing the settlement, knowing precisely what Hunt's understanding of the agreement was.

These facts cry out for equitable relief. At the least there was a mutual mistake of fact for which rescission would ordinarily be an appropriate remedy. However, rescission is wholly impractical here. The sheer passage of time, Hunt's changes of circumstance in the interim, and the independent interest of the Tax Court in not having stale litigation reactivated require an end to these proceedings, not a restoration of the *status quo ante.* Equitable estoppel provides a just means to that end. Hunt's reasonable reliance on the fact that he would be paid interest on the 1982 refund, the IRS's knowledge of that reliance, and its intentional finalization of the Tax Court case provide a classic case for the intervention of a court of equity. *See generally Ingalls Shipbuilding v. Director, OWCP,* 976 F.2d 934, 938 n. 13 (5th Cir. 1992); *Kennedy v. United States,* 965 F.2d 413 (7th Cir.1992).

 The government argues that equitable estoppel lies against the government, if at all, only "in a very narrow category of cases—when the traditional elements of estoppel are shown and there is affirmative misconduct on the part of the government." *Kennedy v. United States,* 965 F.2d at 417. The government goes on to say that there is no evidence of "affirmative misconduct" by the IRS here. To the extent that what the government means is that Duvall, Bryant, and others who directly participated in the settlement of Hunt's case acted in subjective good faith, that is, believing that Hunt would be given interest on the 1982 refund, I fully agree with its assessment of the evidence. Indeed, there is no evidence on the present record of subjective bad faith on the part of any individual representative of the government, including whoever within the IRS bureaucracy made the decision to require Hunt to submit a Form 1040X and to invoke the 45–day rule of sections 6611(e) and 6611(f) on the basis of that submission. However, the IRS, like any other corporate body, must be deemed to have the knowledge of its constituent members. When the knowledge of Duvall and Bryant concerning Hunt's expectation that he would receive interest on the 1982 refund—and his reliance on that expectation—is attributed to the person who made the decision not to pay interest on the refund on the basis of the submission of the Form 1040X, "affirmative misconduct" on the part of the IRS sufficient to give rise to an equitable estoppel is clearly established.

For these reasons, Hunt's motion for partial summary judgment will be granted and the government's motion for partial

summary judgment will be denied. I will enter an order to that effect, quantifying the amount of the interest to be paid, after conferring with Hunt (who is appearing *pro se*) and counsel for the government.