T.C. Memo. 2004-131

UNITED STATES TAX COURT

THE CONNELL BUSINESS COMPANY, ET AL.,[1] Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Filed June 1, 2004.

Docket Nos.  13667-01, 13668-01,
13669-01, 13670-01,
13671-01.

<u>Joe Alfred Izen, Jr.</u>, for petitioners.

<u>Richard J. Hassebrock</u>, for respondent.

MEMORANDUM OPINION

GALE, <u>Judge</u>:  Respondent determined deficiencies in

petitioners' Federal income taxes and accuracy-related penalties

---

[1] Cases of the following petitioners are consolidated
herewith:  The Connell Family Trust, docket No. 13668-01; The
Connell Vehicle Co., docket No. 13669-01; The Connell Vehicle Co.
#101, docket No. 13670-01; Thomas E. and Sara Anne Connell,
docket No. 13671-01.

for the tax years 1995, 1996, and 1997 as follows:

The Connell Business Co.
docket No. 13667-01

| Year | Deficiency | Accuracy-related penalties Sec. 6662(a) |
|------|-----------|------------------------------------------|
| 1995 | $17,935 | $3,587.00 |
| 1996 | 31,946 | 6,389.20 |
| 1997 | 14,394 | 2,878.80 |

The Connell Family Trust
docket No. 13668-01

| Year | Deficiency | Accuracy-related penalties Sec. 6662(a) |
|------|-----------|------------------------------------------|
| 1995 | $21,061 | $4,212.20 |
| 1996 | 32,764 | 6,552.80 |
| 1997 | 25,738 | 5,147.60 |

The Connell Vehicle Co.
docket No. 13669-01

| Year | Deficiency |
|------|-----------|
| 1995 | $136 |
| 1996 | 136 |

The Connell Vehicle Co. #101
docket No. 13670-01

| Year | Deficiency | Accuracy-related penalties Sec. 6662(a) |
|------|-----------|------------------------------------------|
| 1995 | $1,348 | $269.60 |
| 1996 | 1,338 | 267.60 |
| 1997 | 962 | 192.40 |

Thomas E. and Sara Anne Connell:
docket No. 13671-01

| Year | Deficiency | Accuracy-related penalties Sec. 6662(a) |
|------|------------|------------------------------------------|
| 1995 | $30,576.26 | $6,115.25 |
| 1996 | 56,956.65 | 11,391.33 |
| 1997 | 24,371.16 | 4,874.23 |

Unless otherwise noted, all section references are to the Internal Revenue Code in effect during the taxable years at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

After concessions, the issues remaining for decision are: (1) Whether the notice of deficiency issued to petitioners Thomas E. and Sara Anne Connell was timely as to the 1995 and 1996 tax years; and (2) whether respondent is estopped from asserting deficiencies for the 1995, 1996, and 1997 tax years against petitioners Thomas E. and Sara Anne Connell because he prematurely assessed the deficiencies and later abated some, but not all, of the assessments.[2]

---

[2] Petitioners also contend that respondent has the burden of proof with respect to all issues in these cases. Respondent concedes that he has the burden of proof on whether the 6-year period of limitations under sec. 6501(e)(1)(A) applies with respect to petitioners Thomas E. and Sara Anne Connell's 1995 and 1996 returns. We conclude that the burden of proof has not shifted to respondent under sec. 7491(a) with respect to the remaining issues. The record in this case establishes that the examinations of the 1995 and 1996 returns commenced before July 22, 1998, rendering sec. 7491 inapplicable to those years. See Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. 105-206, sec. 3001(a), 112 Stat. 726. As for 1997,
(continued...)

For the reasons stated below, we hold that the notice of deficiency was timely as to the 1995 and 1996 tax years because it was issued within the 6-year period of limitations provided in section 6501(e)(1)(A). We further hold that the premature assessment of deficiencies for 1995, 1996, and 1997 and subsequent abatement of those assessments does not bar respondent from reassessing those deficiencies.

## Background

The parties submitted these cases fully stipulated, pursuant to Rule 122. The stipulation of facts, supplemental stipulation of facts, and the attached exhibits are incorporated herein by this reference.

Petitioners are Thomas E. and Sara Anne Connell (petitioners) and four trusts, The Connell Business Co., The Connell Family Trust, The Connell Vehicle Co., and The Connell Vehicle Co. #101 (collectively, petitioner trusts). At the time they filed their petitions, petitioners resided in Dayton, Ohio, and the petitioner trusts' addresses were in Dayton, Ohio.

---

[2](...continued)
petitioners have not met their burden of proving that they have met the requirements of sec. 7491(a). See H. Conf. Rept. 105-599, at 239 (1998), 1998-3 C.B. 747, 993; S. Rept. 105-174, at 45 (1998), 1998-3 C.B. 537, 581. For example, there is no competent evidence establishing that petitioners cooperated within the meaning of sec. 7491(a)(2)(B). In any event, the results we reach with respect to petitioners' estoppel, admission, and res judicata claims do not depend upon the allocation of the burden of proof.

Petitioners and the petitioner trusts filed their Federal income tax returns for 1995, 1996, and 1997 on April 15, 1996 and 1997 and August 15, 1998, respectively.

Except for the 1997 return filed by The Connell Vehicle Co. #101, which identified The Connell Family Trust as the beneficiary, the returns filed by The Connell Vehicle Co. and The Connell Vehicle Co. #101 identified The Connell Business Co. as the trusts' beneficiary.

The returns filed by The Connell Business Co. identified The Connell Family Trust as the beneficiary.

The 1995 and 1996 returns filed by The Connell Family Trust identified petitioners and The Connell Charitable Trust as beneficiaries. The Connell Family Trust return for 1996 reported distributions of $6,068 to each of the petitioners.

Petitioners' individual returns made no reference to the petitioner trusts or in any way indicated that petitioners were associated with, beneficiaries of, or recipients of income from, the petitioner trusts. With regard to the $6,068 of income reported as allocated to each of petitioners in the 1996 return for The Connell Family Trust, petitioners' 1996 return listed that income in Schedules C, Profit or Loss From Business, (one for each petitioner) as "Gross receipts or sales". The Schedules C contain no information that would suggest that The Connell Family Trust was the source of that income. Petitioners reported

$6,709.91 and $20,289.03 of gross income in their 1995 and 1996 returns, respectively.

At some point before April 15, 1998, petitioners were referred by respondent's Examination Division to respondent's Criminal Investigation Division for a potential criminal fraud action with respect to their use of the petitioner trusts in 1994, 1995, and 1996.[3] While a recommendation was made in 2000 to prosecute petitioners for violations of section 7201 for 1995, 1996, and 1997, no criminal action was initiated, for reasons not disclosed in the record.

Respondent issued notices of deficiency to petitioners and the petitioner trusts for 1995, 1996, and 1997 on August 2, 2001. The notices were issued more than 3, but fewer than 6, years after the 1995 and 1996 returns were filed. Petitioners concede that the notice issued to them was timely with respect to their 1997 return.

Petitioners and the petitioner trusts timely mailed their petitions for the 1995, 1996, and 1997 tax years to the Tax Court on October 31, 2001. During the fall/winter of 2001-2002, the Court experienced significant delays in the receipt of mail

---

[3] Although the fraud referral report prepared by the Examination Division is undated, it is stated therein that the "earliest statute expiration date" for the years under review is Apr. 15, 1998, indicating that the referral was being made before that date.

because of anthrax contamination in the U.S. Postal Service,[4] and the petitions did not reach the Tax Court until December 5, 2001. The Tax Court served the petitions on respondent on December 6, 2001. Before receiving service of the petitions, respondent assessed the deficiencies and penalties determined in the notices of deficiency and notified petitioners and the petitioner trusts of the assessments. After receiving service of the petitions, respondent promptly abated most of the assessments.[5] Letters dated September 16, 2002, were sent to petitioners and the petitioner trusts notifying them of the abatements.

The parties have stipulated that the petitioner trusts are to be disregarded for Federal income tax purposes and that the income reported on the petitioner trusts' returns is income of petitioners and should have been reported on their individual returns.[6]

Petitioners concede that they should have reported additional gross income of $56,272 and $72,587 in their returns

---

[4] See, e.g., Gibson v. Commissioner, T.C. Memo. 2002-218.

[5] While all of the assessments of the deficiencies against petitioners for 1995, 1996, and 1997 were abated, respondent failed to abate $1.09 of the assessment with respect to The Connell Business Co. for 1997.

[6] As a result, respondent has conceded the deficiencies determined with respect to the petitioner trusts.

for 1995 and 1996.[7]  The parties have resolved their differences with respect to various other items of income, deductions, credits, and penalties with respect to the 1995, 1996, and 1997 taxable years.

## Discussion

1.   Period of Limitations Under Section 6501(e)(1)(A)

Petitioners argue that respondent is barred from assessing deficiencies for 1995 and 1996 because the notice of deficiency was mailed more than 3 years from the dates the returns for those years were filed.  See sec. 6501(a).  Respondent contends that petitioners omitted gross income in excess of 25 percent of the amounts stated in their returns, and therefore he is entitled under section 6501(e)(1)(A) to assess the deficiencies any time within 6 years after the 1995 and 1996 returns were filed. Petitioners answer that the gross income omitted from their individual returns is disregarded in determining whether the omitted amount exceeded 25 percent of the gross income reported in their returns, because the omitted income was adequately

---

[7] The parties have stipulated that petitioners earned or received, but did not report on their individual returns, income totaling $61,272 and $84,723 in 1995 and 1996, respectively. However, in handwritten amendments to the stipulations, respondent appears to concede that the foregoing figures should be offset by the business income of $5,000 and $12,136 that petitioners reported on Schedules C in their 1995 and 1996 returns, respectively.  In finding the figures listed in the text, we have resolved this ambiguity in petitioners' favor.  In any event, these discrepancies have no impact on the issues remaining for resolution.

disclosed, within the meaning of section 6501(e)(1)(A)(ii), by virtue of having been reported in the returns of the petitioner trusts.[8] Thus, petitioners contend, they did not omit from gross income an amount in excess of 25 percent of gross income reported on their individual returns, precluding respondent's use of the 6-year period of limitations provided in section 6501(e)(1)(A).

For the reasons explained below, we conclude that petitioners failed adequately to disclose the gross income omitted from their 1995 and 1996 returns, and that respondent has carried his burden of showing that he is entitled to the 6-year period of limitations set forth in section 6501(e)(1)(A). Accordingly, the notice of deficiency issued to petitioners is timely as to the 1995 and 1996 tax years.

Section 6501(a) provides that "the amount of any tax imposed by this title shall be assessed within 3 years after the return was filed". Section 6501(e)(1)(A) extends the 3-year period of limitations to 6 years where the taxpayer "omits from gross income an amount properly includible therein which is in excess

---

[8] Although petitioners at various points claim that the income they concede should have been reported on their 1995 and 1996 returns was in fact reported on the returns of the petitioner trusts, the parties' stipulations do not establish this fact. Nonetheless, in light of our conclusion, infra, that any reporting of the income in the returns of the petitioner trusts may not be considered for purposes of sec. 6501(e)(1)(A)(ii) in these cases, it is immaterial whether all, or only some, of petitioners' omitted income was reported in the returns of the petitioner trusts.

of 25 percent of the amount of gross income stated in the return".  In computing the amount of gross income omitted, any amounts "disclosed in the return, or in a statement attached to the return, in a manner adequate to apprise the Secretary of the nature and amount of such item" are not taken into account.  Sec. 6501(e)(1)(A)(ii).  Determining whether adequate notice has been demonstrated is a question of fact, The Univ. Country Club, Inc. v. Commissioner, 64 T.C. 460, 468 (1975), and respondent has the burden of demonstrating that the 6-year period for assessments set forth in section 6501(e)(1)(A) applies, Seltzer v. Commissioner, 21 T.C. 398, 401 (1953).

In Colony, Inc. v. Commissioner, 357 U.S. 28, 36 (1958), the Supreme Court construed the term "omit" in the predecessor of section 6501(e)(1)(A) as applicable where the return contains "no clue to the existence of the omitted item."  In determining whether adequate disclosure has been made under section 6501(e)(1)(A)(ii), we have similarly looked to see whether the return offered a "clue" as to the existence, nature, and amount of omitted income.  Quick Trust v. Commissioner, 54 T.C. 1336, 1347 (1970), affd. 444 F.2d 90 (8th Cir. 1971).  As we stated in Quick Trust, "this does not mean simply a 'clue' which would be sufficient to intrigue a Sherlock Holmes.  But neither does it mean a detailed revelation of each and every underlying fact".  Id.

Section 6501(e)(1)(A)(ii) requires that any disclosure of gross income be made "in the return, or in a statement attached to the return". Petitioners' 1995 and 1996 returns did not make reference to or have attached to them the returns of the petitioner trusts, or disclose in any manner that petitioners had any relationship with the petitioner trusts. Thus, the individual returns offer no "clue" as to the existence, nature, or amount of the omitted income.

Relying on Benderoff v. United States, 398 F.2d 132 (8th Cir. 1968), petitioners assert that, even though their individual returns did not disclose the omitted gross income, we must look beyond petitioners' returns to the trust returns. When taken together, they argue, the individual and trust returns adequately disclose the omitted gross income. We rejected this same argument in Reuter v. Commissioner, T.C. Memo. 1985-607.

In Reuter, the taxpayers failed to report in their individual return income attributable to them from an S corporation. The individual return contained no indication that the taxpayers were shareholders of an S corporation or that they derived any nonsalary income from such a corporation.[9] The taxpayers cited Benderoff v. United States, supra, for the proposition that consideration must be given not only to their

_____

[9] The taxpayers disclosed that they received wages from the S corporation, but they did not indicate that it was an S corporation or that they were the shareholders thereof.

individual return, but also to the return of the S corporation, in determining whether adequate disclosure had been made under section 6501(e)(1)(A)(ii), regardless of whether the individual return made reference to the S corporation's return.

In rejecting this argument and the taxpayer's reading of Benderoff, we noted that in cases where we have looked beyond a taxpayer's individual return for purposes of determining the adequacy of disclosure, "without exception, the taxpayer's individual income tax return * * * contained some reference to a separate document from which the omission from income could be ascertained." Reuter v. Commissioner, supra (discussing Roschuni v. Commissioner, 44 T.C. 80 (1965); Rose v. Commissioner, 24 T.C. 755 (1955); and Taylor v. United States, 417 F.2d 991 (5th Cir. 1969), among others). Because the individual return in that case contained no reference to the S corporation, we did not look beyond the individual return to determine whether adequate disclosure had been made.

Because petitioners' 1995 and 1996 returns made no reference to the petitioner trusts or the trusts' returns, we hold, consistent with Reuter v. Commissioner, supra, that petitioners may not rely on the trusts' returns to establish that adequate disclosure of any item of gross income has been made under section 6501(e)(1)(A)(ii). Accordingly, the petitioner trusts'

returns are not considered when determining the amount of omitted gross income under section 6501(e)(1)(A).[10]

Petitioners reported $6,709.91 and $20,289.03 of gross income in their 1995 and 1996 returns, respectively.[11]  Twenty-five percent of these figures is $1,677.48 and $5,072.26, respectively.  Petitioners concede that gross income of $56,272 and $72,587 was omitted from their individual returns for 1995 and 1996, respectively.  Thus, regardless of whether some or all of this omitted income was reported in the returns of the petitioner trusts, respondent has met his burden of showing that petitioners omitted from gross income an amount in each year that exceeded 25 percent of the gross income reported in petitioners' 1995 and 1996 returns.  Accordingly, the 6-year period of limitations set forth in section 6501(e)(1)(A) applies to petitioners' 1995 and 1996 tax years.  Because the notice of

---

[10] Petitioners also argue that disclosure must have been adequate because respondent was in fact sufficiently aware of petitioners' use of trusts in 1995 and 1996 to make a criminal referral before expiration of the 3-year period of limitations for those years.  The test, however, is not whether petitioners' returns were capable of arousing suspicion; the test is whether the disclosure in the returns was adequate to apprise respondent of the nature and amount of the omitted income.

[11] Respondent concedes, and petitioners have not disputed, these figures, which include amounts reported on certain partnership returns as well as amounts reported as tax-exempt interest.  As it would not affect the result in these cases, we assume (without deciding) that tax-exempt interest may constitute "gross income stated in the return" for purposes of sec. 6501(e)(1)(A).

deficiency was issued to petitioners within 6 years after they filed their 1995 and 1996 returns, we conclude that the notice of deficiency was timely, and respondent is not barred on this ground from assessing the deficiencies at issue.

2.   Estoppel, Admission, and Res Judicata Theories

Petitioners argue that respondent should be estopped from asserting deficiencies with respect to 1995, 1996, and 1997 because he prematurely assessed deficiencies for these years and then abated most, but not all,[12] of the assessments.  Petitioners contend that the abatement of the assessments equitably estops respondent from claiming that the abated amounts are owed and/or that respondent has, by virtue of the abatements, admitted that these amounts are not owed.  Petitioners further claim that respondent's assertion of the deficiencies is precluded under the doctrines of res judicata and collateral estoppel.

Petitioners' argument that respondent's premature assessment and subsequent abatement of the deficiencies at issue gives rise to equitable estoppel is factually and legally baseless. Petitioners have shown no detrimental reliance, and, in any event, "the abatement of an assessment is not a binding action

---

[12] Petitioners seek to make something of the fact that respondent failed to abate $1.09 of the assessment against The Connell Business Co. for 1997.  However, respondent has conceded all deficiencies determined with respect to the petitioner trusts, including that determined for The Connell Business Co. in 1997.

that can estop the Commissioner from reassessing a deficiency."
Serv. Bolt & Nut Co. v. Commissioner, 724 F.2d 519, 524 (6th Cir.
1983), affg. 78 T.C. 812 (1982).[13]

In the same vein, petitioners' contention that the
abatements constitute an admission on respondent's part regarding
the amount of the deficiencies simply confuses the concepts of
"assessment" and "deficiency". While the abatements might be
construed to constitute an admission that the prior assessments
were premature, they in no way constitute admissions as to the
proper amount of the deficiencies. See Pfeifer v. Commissioner,
T.C. Memo. 1983-437 ("There is no merit to petitioner's
contention that the abatement [of a premature assessment] was
determinative of his tax liability.").

Finally, petitioners' res judicata and collateral estoppel
claims are utterly frivolous. These doctrines bar parties that
have previously litigated a matter from relitigating the same
matter. See, e.g., Hambrick v. Commissioner, 118 T.C. 348, 351
(2002); Peck v. Commissioner, 90 T.C. 162, 166 (1988), affd. 904
F.2d 525 (9th Cir. 1990). Petitioners have not even alleged,

---

[13] The single case cited by petitioners, Hunt v. United
States, 94 F.Supp. 2d 665 (D. Md. 2000), is readily
distinguishable. There, the Commissioner was equitably estopped
from refusing to pay interest where the taxpayer reasonably and
detrimentally relied on the understanding that he would receive
such interest in settling his Tax Court case and thereby waiving
his right to a deficiency proceeding. Here, petitioners have not
shown, inter alia, that they reasonably or detrimentally relied
on the abatements.

much less shown, that any issue in these cases was the subject of a prior judicial proceeding.

To reflect the foregoing,

<u>Decisions will be entered for petitioners in docket Nos. 13667-01, 13668-01, 13669-01, and 13670-01</u>.

<u>Decision will be entered under Rule 155 in docket No. 13671-01</u>.